# ROSE *v.* ROSE ET AL.

No. 85–1206.  Argued March 4, 1987—Decided May 18, 1987

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, BLACKMUN, and POWELL, JJ., joined, and in Parts I, II–A, II–B, II–D, and III of which STEVENS and O'CONNOR, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the

judgment, in which STEVENS, J., joined, *post*, p. 636. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 640. WHITE, J., filed a dissenting opinion, *post*, p. 644.

*Jerry S. Jones* argued the cause and filed briefs for appellant.

*Roger Clegg* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Wallace, Harriet S. Shapiro,* and *Michael Jay Singer.*

*Howell H. Sherrod, Jr.,* argued the cause for appellee Rose. On the brief was *Michael J. Davenport. W. J. Michael Cody,* Attorney General, argued the cause for appellee State of Tennessee. With him on the brief were *John Knox Walkup,* Chief Deputy Attorney General, *Andy Bennett* and *Jennifer Helton Small,* Deputy Attorneys General, and *Dianne Stamey,* Assistant Attorney General.*

JUSTICE MARSHALL delivered the opinion of the Court.

In this case, we are asked to decide whether a state court has jurisdiction to hold a disabled veteran in contempt for failing to pay child support, where the veteran's only means

---

*Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *John K. Van de Kamp,* Attorney General, *William A. Richmond,* and *John S. Higgins, Jr.;* for the State of Connecticut et al. by *Joseph I. Lieberman,* Attorney General, *Clarine Nardi Riddle,* Deputy Attorney General, *Joseph X. DuMond, Jr.,* and *William A. Collier,* Assistant Attorneys General, joined by the Attorneys General for their respective jurisdictions as follows: *Charles A. Graddick* of Alabama, *Steve Clark* of Arkansas, *Charles M. Oberly III* of Delaware, *Corinne Watanabe* of Hawaii, *Robert T. Stephan* of Kansas, *William L. Webster* of Missouri, *Brian McKay* of Nevada, *W. Cary Edwards* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Nicholas J. Spaeth* of North Dakota, *LeRoy S. Zimmerman* of Pennsylvania, *Mark V. Meierhenry* of South Dakota, *Jim Mattox* of Texas, *David L. Wilkinson* of Utah, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, *A. G. McClintock* of Wyoming, *C. William Ullrich* of Guam; and for the Women's Legal Defense Fund et al. by *Janet L. McDavid, Donna R. Lenhoff,* and *Nancy D. Polikoff.*

of satisfying this obligation is to utilize benefits received from the Veterans' Administration under 38 U. S. C. § 314 as compensation for a service-connected disability.

## I

Appellant Charlie Wayne Rose is a totally disabled veteran of the Vietnam war. He married appellee Barbara Ann McNeil Rose in 1973, and the couple had two children before their marriage ended in October 1983, with a divorce decree from the Circuit Court for Washington County, Tennessee. In setting appellant's financial responsibility for child support, the Circuit Court considered along with other factors identified by a Tennessee statute the "earning capacity, obligations and needs, and financial resources of each parent." Tenn. Code Ann. § 36–5–101(e)(3) (1984) (formerly Tenn. Code Ann. § 36–820 (1977)). Appellant's income was then, and is now, composed entirely of benefits received from the Veterans' and Social Security Administrations. Appellant received monthly:[1] $1,211 in veterans' disability benefits; $1,806 in veterans' aid and attendance benefits; $90 in veterans' dependents' benefits; and $281 in Social Security disability benefits. The children received an additional $94 a month in Social Security children's insurance benefits.

The Circuit Court ordered appellant to pay $800 per month as child support, and he did not appeal. From the record it appears that he initially paid appellee $706 monthly, contending that the remaining $94 was satisfied by the children's insurance benefits appellee had received directly from the Social Security Administration. However, on appellee's first petition for contempt, the Circuit Court clarified its order in March 1984 to require appellant to pay $800 per month *in addition* to the Social Security insurance benefits. Record 19.

---

[1] These figures first appear in the record in May 1984, in pleadings filed by appellant as part of the contempt proceeding from which the present appeal is taken. Record 28. We presume that appellant received equal or comparable benefits at the time of the divorce. Congress has since increased slightly certain of the benefits, but for purposes of this appeal we use the figures provided at the time of the contempt proceeding.

The following month appellant paid for the support of his children only the $90 in dependents' benefits he had received from the Veterans' Administration. Appellee filed a second petition for contempt, seeking the remaining $710. Appellant responded with the assertion that only the Veterans' Administration or Social Security Administration could order him to contribute additional sums for child support. Invoking the Supremacy Clause, U. S. Const., Art. VI, cl. 2, he sought a ruling from the Circuit Court that it lacked jurisdiction over the disability benefits he received from these federal agencies and that § 36–820, pursuant to which the court had considered these benefits in setting the amount of child support, was null and void. Record 28–29.

The Circuit Court, after a hearing, found appellant in willful contempt for failing to pay child support. The court acknowledged that appellant could challenge the constitutionality of § 36–820, and could make the State of Tennessee a party to the action for such purposes, but it held that in the meantime he would have to comply with the order of child support. The court then ordered appellant incarcerated until he satisfied this obligation. App. to Juris. Statement 11a. Ten days later, appellant was released pursuant to an agreement between the parties that he would pay appellee moneys past due and, pending disposition of appeals, would each month pay $400 to appellee and deposit $400 into the registry of the Circuit Court. Record 39–40.

After becoming a party to this action, the State of Tennessee moved for summary judgment, arguing that § 36–820 was constitutional and thus the Circuit Court had properly asserted jurisdiction over appellant's disability benefits in setting and enforcing his child support obligation. The court agreed. In a two-page order, it upheld the statute and concluded that it had validly exercised "jurisdiction to order support payments to be made from Federal Disability Income Benefits." App. to Juris. Statement 14a.

The Tennessee Court of Appeals affirmed, rejecting appellant's contention that the Veterans' and Social Security Ad-

ministrations have exclusive jurisdiction to specify payment of child support from the disability benefits they provide. The appellate court first invoked precedent from this Court for the general rule that "state family law must not do major damage to clear and substantial federal interest[s]," *id.*, at 3a, citing *McCarty* v. *McCarty*, 453 U. S. 210, 220 (1981), or else "the Supremacy Clause will demand that state law be overridden." *Hisquierdo* v. *Hisquierdo*, 439 U. S. 572, 581 (1979). It then determined that Congress had intended disability benefits to support the beneficiary *and his dependents*, and thus the Circuit Court's order directing appellant to pay a portion of these benefits for the support of his children, or be held in contempt, did not undermine a substantial federal interest.

When the Supreme Court of Tennessee denied appellant's application for permission to appeal, App. to Juris. Statement 22a, he filed a jurisdictional statement in this Court. He expressly abandoned his challenge to the jurisdiction of the Circuit Court over the $281 in Social Security disability benefits he receives each month, Juris. Statement 16, leaving only his claim that jurisdiction to award as child support a portion of his monthly veterans' disability benefits and veterans' aid and attendance benefits rests exclusively in the Veterans' Administration.[2] We noted probable jurisdiction,[3] 478 U. S. 1003 (1986), and now affirm.

---

[2] Joined by the United States as *amicus curiae*, appellant contends that the lower courts are divided on the issue whether state courts may award alimony or child support out of benefits paid to a disabled veteran. Compare, *e. g.*, *Parker* v. *Parker*, 335 Pa. Super. 348, 350–354, 484 A. 2d 168, 169–170 (1984); *In re Gardner*, 220 Wis. 493, 499–500, 264 N. W. 643, 646 (1936); *Pishue* v. *Pishue*, 32 Wash. 2d 750, 754–756, 203 P. 2d 1070, 1072–1073 (1949); *Gaskins* v. *Security-First National Bank of Los Angeles*, 30 Cal. App. 2d 409, 416–418, 86 P. 2d 681, 684–685 (1939), with, *e. g.*, *Ex parte Burson*, 615 S. W. 2d 192, 193 (Tex. 1981).

[3] Construing Tenn. Code Ann. § 36–820 (1977) (now codified as Tenn. Code Ann. § 36–5–101 (1984)) to authorize an award of a portion of appellant's veterans' disability benefits and veterans' aid and attendance

## II

The Court of Appeals correctly identified the constitutional standard for determining whether § 36–820, as construed by the Tennessee courts to authorize an award of a veteran's disability benefits as child support, conflicts with federal law and is therefore pre-empted under the Supremacy Clause. We have consistently recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U. S. 586, 593–594 (1890); see *Hisquierdo, supra,* at 581; *McCarty, supra,* at 220. "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted." *Hisquierdo, supra,* at 581, quoting *Wetmore* v. *Markoe*, 196 U. S. 68, 77 (1904). Before a state law governing domestic relations will be overridden, it "must do 'major damage' to 'clear and substantial' federal interests." *Hisquierdo, supra,* at 581, quoting *United States* v. *Yazell*, 382 U. S. 341, 352 (1966).

Appellant claims that three provisions from Title 38 of the United States Code governing veterans' benefits, and a combination of provisions from the Child Support Enforcement Act, 42 U. S. C. § 651 *et seq.*, conflict with, and evidence Congress' intent to pre-empt, state statutes that are construed to give state courts jurisdiction over veterans' disability benefits. We consider each in turn.

---

benefits as child support, the courts below have rejected appellant's contention that this statute conflicts with the federal disability benefits scheme administered by the Veterans' Administration and is therefore pre-empted under the Supremacy Clause, U. S. Const., Art VI, cl. 2. Because the state statute has been applied over objection that its application was unconstitutional, we conclude that this case is properly before us as an appeal. See 28 U. S. C. § 1257(2); *McCarty* v. *McCarty*, 453 U. S. 210, 219–220, n. 12 (1981); R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice 112–113 (6th ed. 1986).

A

First, appellant relies on 38 U. S. C. § 3107(a)(2) (1982 ed., Supp. III), a provision that gives the Administrator of Veterans' Affairs discretionary authority to apportion disability compensation on behalf of a veteran's children. Section 3107(a)(2) provides: "All or any part of the compensation . . . payable on account of any veteran may . . . if the veteran's children are not in the custody of the veteran be apportioned as may be prescribed by the Administrator." Appellant contends that this grant of authority is exclusive, and thus only the Administrator may issue an order directing him to pay appellee a portion of his disability benefits as child support. In the eyes of appellee and the State of Tennessee, § 3107 (a)(2) was intended simply to facilitate separate payment of benefits directly to a veteran's children in amounts that may have previously been set by a state court, and does not displace the state court's traditional enforcement remedies.

The parties cite no legislative history on the meaning of § 3107(a)(2), and our search has uncovered nothing of a dispositive nature. Nor are the Administrator's regulations for apportionment decisive. See 38 CFR §§ 3.450–3.461 (1986). Nowhere do the regulations specify that only the Administrator may define the child support obligation of a disabled veteran in the first instance. To the contrary, appellant, joined by the United States as *amicus curiae*, concedes that a state court may *consider* disability benefits as part of the veteran's income in setting the amount of child support to be paid. However, the carefully constructed argument continues, the state court's power to *enforce* its support order extends solely to income not derived from veterans' disability benefits. To collect child support in cases where it can only be paid from disability benefits, a claim for apportionment must first be filed with the Administrator on behalf of the children. See § 3.452(a). The Administrator may then con-

sider the state-court order in deciding how much, if any, of appellant's disability benefits should be apportioned to the children. Reply Brief for Appellant 2; Brief for United States as *Amicus Curiae* 12, n. 13.

This jurisdictional framework finds little support in the statute and implementing regulations. Neither mentions the limited role appellant assigns the state court's child support order or the restrictions appellant seeks to impose on that court's ability to enforce such an order. The statute simply provides that disability benefits "may . . . be apportioned as may be prescribed by the Administrator." 38 U. S. C. § 3107(a)(2). The regulations broadly authorize apportionment if "the veteran is not reasonably discharging his or her responsibility for the . . . children's support." 38 CFR § 3.450(a)(1)(ii) (1986). In none of these provisions is there an express indication that the Administrator possesses exclusive authority to order payment of disability benefits as child support. Nor is it clear that Congress envisioned the Administrator making independent child support determinations in conflict with existing state-court orders. The statute gives no hint that exercise of the Administrator's discretion may have this effect. The regulations contain few guidelines for apportionment[4] and no specific procedures for bringing apportionment claims.

---

[4] One regulation forbids apportionment "[w]here the total benefit payable to the disabled person does not permit payment of a reasonable amount to any apportionee." 38 CFR § 3.458 (1986). But there are no guidelines defining the reasonableness of a requested apportionment.

By contrast, supplementing the apportionment regulation upon which appellant relies, § 3.450, is a provision that allows disability benefits to be "specially apportioned" between the veteran and his or her dependents "where hardship is shown to exist." § 3.451. A special apportionment is made "on the basis of the facts in the individual case as long as it does not cause undue hardship to the other persons in interest." *Ibid.* This "hardship" regulation *does* specify certain factors for the Administrator to consider in making an apportionment: the "[a]mount of Veterans Administration benefits payable; other resources and income of the veteran and those

Apart from these inadequacies, to construe § 3107(a)(2) as appellant suggests could open for reconsideration a vast number of existing divorce decrees affecting disabled veterans and lead in future cases to piecemeal litigation before the state courts and the Administrator. Given the traditional authority of state courts over the issue of child support, their unparalleled familiarity with local economic factors affecting divorced parents and children, and their experience in applying state statutes such as Tennessee's former § 36–820 that do contain detailed support guidelines and established procedures for allocating resources following divorce, we conclude that Congress would surely have been more explicit had it intended the Administrator's apportionment power to displace a state court's power to enforce an order of child support. Thus, we do not agree that the implicit pre-emption appellant finds in § 3107(a)(2) is "positively required by direct enactment," or that the state court's award of child support from appellant's disability benefits does "major damage" to any "clear and substantial" federal interest created by this statute. *Hisquierdo*, 439 U. S., at 581.

## B

To support his contention that exclusive jurisdiction over veterans' disability benefits is vested in the Administrator, appellant next cites 38 U. S. C. § 211(a). This statute provides:

---

dependents in whose behalf apportionment is claimed; and special needs of the veteran, his or her dependents, and the apportionment claimants." *Ibid.* It also provides that "[o]rdinarily apportionment of more than 50 percent of the veteran's benefits would constitute undue hardship on him or her while apportionment of less than 20 percent of his or her benefits would not provide a reasonable amount for any apportionee." *Ibid.* The fact that similar factors and quantitative guidelines are not listed in the provision for general apportionment suggests that not even the Administrator has interpreted 38 U. S. C. § 3107(a)(2) (1982 ed., Supp. III) to authorize routine child support determinations.

> "[D]ecisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision . . . ." *Ibid.*

Though § 211(a) makes no reference to *state*-court jurisdiction, appellant and the Solicitor General argue that its underlying purposes should nevertheless be deemed controlling here. These purposes, identified in *Johnson* v. *Robison*, 415 U. S. 361, 370 (1974), are to achieve uniformity in the administration of veterans' benefits and protect the Administrator from expensive and time-consuming litigation.

As already noted, however, we can find no clear indication that Congress intended the Administrator to make child support determinations contrary to the determinations of state courts. The interest in uniform administration of veterans' benefits focuses, instead, on the technical interpretations of the statutes granting entitlements, particularly on the definitions and degrees of recognized disabilities and the application of the graduated benefit schedules. See *id.*, at 370, n. 12; Hearing on H. R. 360 et al. before a Subcommittee of the House Committee on Veterans' Affairs, 82d Cong., 2d Sess., 1962–1963 (1952). These are the issues Congress deemed especially well suited for administrative determination insulated from judicial review. Thus, even assuming that § 211(a) covers a contempt proceeding brought in state court against a disabled veteran to enforce an order of child support, that court is not reviewing the Administrator's decision finding the veteran eligible for specific disability benefits. The uniformity of the Administrator's decision is therefore not endangered. And since the Administrator is not a party in a contempt proceeding, no additional litigation burden is created. There being no "major damage" to the federal interests underlying § 211(a), we conclude that it does

not pre-empt exercise of state-court jurisdiction to enforce a veteran's child support obligation.

## C

Appellant next claims that state-court jurisdiction is preempted by 38 U. S. C. § 3101(a), which provides that "[p]ayments of benefits . . . under any law administered by the Veterans' Administration . . . made to, or on account of, a beneficiary . . . shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Though the legislative history for this provision is also sparse, it recognizes two purposes: to "avoid the possibility of the Veterans' Administration . . . being placed in the position of a collection agency" and to "prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income." S. Rep. No. 94–1243, pp. 147–148 (1976). Neither purpose is constrained by allowing the state court in the present case to hold appellant in contempt for failing to pay child support. The contempt proceeding did not turn the Administrator into a collection agency; the Administrator was not obliged to participate in the proceeding or to pay benefits directly to appellee. Nor did the exercise of state-court jurisdiction over appellant's disability benefits deprive appellant of his means of subsistence contrary to Congress' intent, for these benefits are not provided to support appellant alone.

Veterans' disability benefits compensate for impaired earning capacity, H. R. Rep. No. 96–1155, p. 4 (1980), and are intended to "provide reasonable and adequate compensation for disabled veterans *and their families*." S. Rep. No. 98–604, p. 24 (1984) (emphasis added). Additional compensation for dependents of disabled veterans is available under 38 U. S. C. § 315, and in this case totaled $90 per month for appellant's two children. But the paucity of the benefits available under § 315 belies any contention that Congress

intended these amounts alone to provide for the support of the children of disabled veterans. Moreover, as evidenced by § 3107(a)(2), the provision for apportionment we have already discussed, Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents.[5] On this basis we may distinguish several of the Court's prior decisions which held that state law governing domestic relations was pre-empted by federal statutes containing prohibitions similar to § 3101(a) against attachment, levy, or seizure of federal benefits.

In *Wissner* v. *Wissner*, 338 U. S. 655 (1950), this Court rejected a widow's community property claim to one-half the proceeds of a life insurance policy her husband, a deceased Army officer, had purchased during their marriage under a federally assisted program for members of the military. Because the federal statute creating the program gave the insured an express right to designate the beneficiary, this Court held that the entire proceeds must be paid to the husband's mother as he had directed. Otherwise, state community property principles would have frustrated Congress' unequivocal intent that the insured decide who should receive the policy proceeds. *Id.*, at 658–659.

As we have noted in the present case, by contrast, state contempt proceedings to enforce a valid child support order coincide with Congress' intent to provide veterans' disability compensation for the benefit of both appellant and his dependents. Moreover, in reaching what was clearly an alternative holding in *Wissner* that a community property division of the insurance proceeds would constitute a "seizure" in violation of a provision against "attachment, levy, or seizure," the Court was careful to identify a possible exception for ali-

---

[5] That children may rightfully expect to derive support from a portion of their veteran parent's disability benefits is further evident in the regulation prohibiting apportionment once a child has been legally adopted by another person who, as a result of the adoption, assumes the support obligation. See 38 CFR § 3.458(d) (1986).

mony and child support cases. *Id.*, at 659–660. The suggested basis for this exception was that family support obligations are deeply rooted moral responsibilities, while the community property concept is more akin to an amoral business relationship. *Id.*, at 660.

The principles announced in *Wissner* were later applied in a case involving a conflict between state community property law and a federal statute providing retirement benefits for railroad employees. *Hisquierdo* v. *Hisquierdo*, 439 U. S. 572 (1979). There, we rejected a wife's community property claim to a portion of her husband's retirement annuity following their divorce, even though his entitlement to the benefits had accrued, in large part, during their married years. Congress, we held, had determined that the husband, as the retired railroad employee, should be the exclusive beneficiary. *Id.*, at 583. And this right was protected by a statutory prohibition against "garnishment, attachment, or other legal process under any circumstances whatsoever." *Id.*, at 576, quoting § 14 of the Railroad Retirement Act of 1974, 88 Stat. 1345. As in *Wissner*, Congress' precise specification of the intended beneficiary drew a direct conflict with the state community property law. We concluded that to divide the annuity proceeds would have frustrated the federal objective, and, therefore, the state law was pre-empted. 439 U. S., at 585. And again we discussed an exception to the antigarnishment statute for alimony and child support in noncommunity property cases.[6] *Id.*, at 587.

---

[6] Consistent with the distinction suggested in *Wissner* v. *Wissner*, 338 U. S. 655 (1950), Congress had amended the Social Security Act to authorize garnishment of certain federal benefits, including railroad retirement annuities, for spousal and child support but not for community property divisions. 42 U. S. C. §§ 659 and 662. We construed these amendments to "expressly override" the anti-attachment provision for support claims, finding it "logical to conclude that Congress . . . thought that a family's need for support could justify garnishment, even though it deflected other federal benefit programs from their intended goals, but that community property claims, which are not based on need, could not do so." *His-*

We visited *Wissner* once again in *Ridgway* v. *Ridgway*, 454 U. S. 46 (1981), where a state court had ordered an Army officer, as part of a divorce decree, to keep in force a life insurance policy he had purchased under a federally assisted program for military members, and to specify that the proceeds be paid in the event of his death to his former wife for the benefit of their children. Before his death, the husband had remarried and changed the policy's beneficiary designation so that the proceeds would go to his new wife. We held that the state court's divorce decree conflicted with and was therefore pre-empted by the express provision of the federal statute giving the husband an unqualified right to designate the policy beneficiary. *Id.*, at 56–57. We also held that imposing a constructive trust on the policy proceeds for the benefit of the children would violate a statutory prohibition against "attachment, levy, or seizure," 38 U. S. C. § 770(g), a prohibition identical in all pertinent respects to § 3101(a) in the present case. 454 U. S., at 60.

Admittedly, in *Ridgway* we rejected a proposed construction of § 770(g) that would have barred its application to the children's equitable claim, 454 U. S., at 60–61, and we were unable to agree that the distinction between family support obligations and community property divisions would sustain

---

*quierdo* v. *Hisquierdo*, 439 U. S., at 587; see also *McCarty* v. *McCarty*, 453 U. S., at 230.

After our decision in *Hisquierdo*, *supra*, Congress amended the Railroad Retirement Act's prohibition against garnishment and attachment so that retirement annuities *could* be characterized as community property. See 45 U. S. C. § 231m(b)(2) (1982 ed., Supp. III) (enacted in 1983). A comparable congressional response followed our holding in *McCarty*, *supra*, that military retirement benefits were the express personal entitlement of the retired military member and therefore could not, consistent with the intent of Congress, be divided as community property. See 10 U. S. C. § 1408(c)(1) (allowing treatment of retirement benefits as sole property of military member or as property shared with the member's spouse "in accordance with the law of the jurisdiction of [the state] court"); S. Rep. No. 97–502, p. 1 (1982).

an exception to the statute's operation. *Id.*, at 61–62, n. 11; see also *id.*, at 68, 70 (POWELL, J., dissenting). But the critical difference between *Ridgway* and the present case is that Congress has not made appellant the exclusive beneficiary of the disability benefits. As we have demonstrated, these benefits are intended to support not only the veteran, but the veteran's family as well. Recognizing an exception to the application of § 3101(a)'s prohibition against attachment, levy, or seizure in this context would further, not undermine, the federal purpose in providing these benefits. Therefore, regardless of the merit of the distinction between the moral imperative of family support obligations and the businesslike justifications for community property division, we conclude that § 3101(a) does not extend to protect a veteran's disability benefits from seizure where the veteran invokes that provision to avoid an otherwise valid order of child support.

## D

Finally, appellant cites two provisions from the Child Support Enforcement Act that were designed to facilitate garnishment of federal funds where the intended recipient has failed to satisfy a legal obligation of child support. The first provision declares:

> "[M]oneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States . . . to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States . . . were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support . . . ." 42 U. S. C. § 659(a) (1982 ed., Supp. III).

Appellant, however, also points to the statutory definition of an entitlement "based upon remuneration for employment," which specifically excludes "any payments by the Veterans' Administration as compensation for a service-connected dis-

ability . . . ." § 662(f)(2). This exclusion, argues appellant, embodies Congress' intent that veterans' disability benefits not be subject to *any* legal process aimed at diverting funds for child support, including a state-court contempt proceeding of the sort invoked in this case.

But § 659(a) does not refer to *any* legal process. The provision was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies:

> "The term 'legal process' means any writ, order, summons, or other similar process in the nature of garnishment . . . issued by [a state court] . . . and . . . *directed to, and the purpose of which is to compel, a governmental entity,* which holds moneys which are otherwise payable to an individual, *to make a payment* from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support . . . ." § 662(e) (emphasis added).

See also 5 CFR § 581.102(f) (1986); S. Rep. No. 93–1356, pp. 53–54 (1974). Waivers of sovereign immunity are strictly construed, and we find no indication in the statute that a state-court order of contempt issued against *an individual* is precluded where the individual's income happens to be composed of veterans' disability benefits. In this context, the Veterans' Administration is not made a party to the action, and the state court issues no order directing the Administrator to pay benefits to anyone other than the veteran. Thus, while it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support.

## III

We fully appreciate the physical sacrifice appellant made while in the military service of his country, and we acknowledge his needs as a totally disabled veteran for medical assistance and financial support. But we also recognize that pursuant to former Tenn. Code Ann. § 36–820 the Tennessee Circuit Court has properly taken into account appellant's needs, along with the needs of his children, in setting his child support obligation. Neither the Veterans' Benefits provisions of Title 38 nor the garnishment provisions of the Child Support Enforcement Act of Title 42 indicate unequivocally that a veteran's disability benefits are provided solely for that veteran's support. We hold, therefore, that as enacted these federal statutes were not in conflict with, and thus did not pre-empt § 36–820. Nor did the Circuit Court's efforts to enforce its order of child support by holding appellant in contempt transgress the congressional intent behind the federal statutes. The judgment of the Court of Appeals of Tennessee is

*Affirmed.*

JUSTICE O'CONNOR, with whom JUSTICE STEVENS joins, concurring in part and concurring in the judgment.

I agree with the Court that Mr. Rose may be compelled to use his veterans' disability benefits to discharge his child support obligation. I would rest this conclusion, however, on a ground that the Court disdains—the distinction between familial support obligations and other debts. The Court apparently views *Ridgway* v. *Ridgway*, 454 U. S. 46 (1981), as an insuperable obstacle to acknowledging that this distinction makes the difference here. I disagree: while *stare decisis* concerns may counsel against overruling *Ridgway*'s interpretation of the Servicemen's Group Life Insurance Act, I see no reason whatsoever to extend *Ridgway*'s equation of business debts with family support obligations absent the clearest congressional direction to do so. Read in light of this

Nation's common law heritage, the language of this statute, like that in *Ridgway*, incorporates, rather than rejects, this distinction.

The anti-attachment provision of 38 U. S. C. §3101(a) says:

> "Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payment made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

In my view, the bar against "levy, attachment, or seizure" is simply a means of enforcing the "exempt[ion] from the claims of creditors." The plain intent of §3101(a) is to protect the veteran *and* his family against the claims of *creditors*. It is not intended to protect the veteran against claims *by* his family. As JUSTICE STEVENS explained in dissent in *Ridgway*, Congress simply intended:

> "'[T]o relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief.'" 454 U. S., at 76, quoting *Schlaefer* v. *Schlaefer*, 71 App. D. C. 350, 358, 112 F. 2d 177, 185 (1940) (per Rutledge, J.). See also 454 U. S., at 68 (POWELL, J., dissenting).

Our Anglo-American tradition accords a special sanctity to the support obligation. Unlike other debts, for example, the obligation to support spouse and child is enforced on threat of contempt. These obligations, moreover, may not be discharged in bankruptcy. 11 U. S. C. §523(a)(5). Indeed, even before the bankruptcy laws specifically excepted the

support obligation from the discharge, this Court inferred such an exception, explaining the difference between a support obligation and other debts:

> "We think the reasoning of [*Audubon* v. *Shufeldt*, 181 U. S. 575 (1901),] recognizes the doctrine that a decree awarding alimony to the wife or children, or both, is not a debt which has been put in the form of a judgment, but is rather a legal means for enforcing the obligation of the husband and father to support and maintain his wife and children.  He owes this duty not because of any contractual obligation or as a debt due from him to the wife, but because of the policy of the law which imposes the obligation upon the husband.  The law interferes when the husband neglects or refuses to discharge this duty and enforces it against him by means of legal proceedings.
>
> .          .          .          .          .
>
> "The obligation continues after the discharge in bankruptcy as well as before, and is no more than the duty devolved by the law upon the husband to support his children and is not a debt in any just sense." *Wetmore* v. *Markoe*, 196 U. S. 68, 74–76 (1904).

Particularly relevant is the fact that the common law generally will not enforce similar anti-attachment provisions against a family member's claim for support.  In discussing the very similar anti-attachment provision at issue in *Ridgway* v. *Ridgway*, *supra*, at 74, JUSTICE STEVENS noted in dissent:

> "The language used in the 'anti-attachment' provision of the [Servicemen's Group Life Insurance Act] is comparable to that found in so-called 'spendthrift clauses' that have protected trust beneficiaries from the claims of commercial creditors for centuries.  As stated by Dean Griswold, '[i]t is widely held, however, that even where such trusts are generally valid, the interest of the beneficiary may be reached for the support of his wife or

children, or for the payment of alimony to his wife.' E. Griswold, Spendthrift Trusts 389 (2d ed. 1947)." See also *id.*, at 73–77 (STEVENS, J., dissenting).

As the Court acknowledges, *ante*, at 631–632, until *Ridgway*, we had carefully refused to hold that anti-attachment provisions similar to § 3101(a) shield the beneficiary from the support claims of his spouse and children. *Wissner* v. *Wissner*, 338 U. S. 655, 659–660 (1950); *Hisquierdo* v. *Hisquierdo*, 439 U. S. 572, 587 (1979). In addition, state courts all along have asserted that § 3101(a), its predecessors, and similar statutes do not make the support obligation unenforceable. *Mims* v. *Mims*, 442 So. 2d 102, 103–104 (Ala. Civ. App. 1983); *Smolin* v. *First Fidelity Savings & Loan Assn.*, 238 Md. 386, 392–394, 209 A. 2d 546, 549–550 (1965); *Dillard* v. *Dillard*, 341 S. W. 2d 668, 675 (Tex. Civ. App. 1960); *Voelkel* v. *Tohulka*, 236 Ind. 588, 592–593, 141 N. E. 2d 344, 346, cert. denied, 355 U. S. 891 (1957); *Pishue* v. *Pishue*, 32 Wash. 2d 750, 754–756, 203 P. 2d 1070, 1072–1073 (1949); *Hannah* v. *Hannah*, 191 Ga. 134, 137–139, 11 S. E. 2d 779, 781–782 (1940); *Gaskins* v. *Security-First National Bank of Los Angeles*, 30 Cal. App. 2d 409, 417–418, 86 P. 2d 681, 684–685 (1939); *In re Gardner*, 220 Wis. 490, 493, 264 N. W. 643, 647 (1936); *Stirgus* v. *Stirgus*, 172 Miss. 337, 341, 160 So. 285, 286 (1935); but cf. *Ridgway* v. *Ridgway*, 454 U. S., at 62, n. 11 (citing cases).

In short, the support obligation has always been granted a special place in our law. While the broad language of § 3101(a) seems clearly meant to bar the ordinary creditor's attachment, I cannot find, in light of this Nation's common law tradition, that the language of § 3101(a) expresses anything like the unequivocal congressional intent necessary to bar family members from enforcing the veteran's support obligation. The contrary holding in *Ridgway* is hopelessly anomalous, and should be relegated to the status of "a derelict on the waters of the law." *Lambert* v. *California*, 355 U. S. 225, 232 (1957) (Frankfurter, J., dissenting). Accord-

ingly, I concur in Parts I, II–A, II–B, II–D, and III of the Court's opinion, and object only to its failure to rest its holding squarely on the unique force of the support obligation.

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I concur in the judgment of the Court that none of the statutes cited by appellant or the United States bars the Tennessee court from basing child support awards on a parent's veterans' benefits, or from enforcing such an award by civil contempt. I cannot, however, join much of the Court's analysis, which unnecessarily, and in my view erroneously, suggests that certain state actions not before us here are permissible because they do not frustrate the purposes of the federal provisions. While incompatibility with the purpose of a federal statute may invalidate a state law that does not violate its text, I know of no precedent for the proposition, which these portions of the opinion adopt, that compatibility with the purpose of a federal statute can save a state law that violates its text. Such a doctrine in effect asserts a power to narrow statutory texts, insofar as their pre-emptive effect is concerned, so as to make them more precisely tailored to the purpose that the Court perceives.

I

Title 38 U. S. C. § 3107(a)(2) (1982 ed., Supp. III) provides "All or any part of the compensation . . . payable on account of any veteran may . . . if the veteran's children are not in the custody of the veteran, be apportioned as may be prescribed by the Administrator." I agree with the Court that the language of this statute (1) gives the Administrator only discretionary authority to make apportionments; (2) does not on its face bar States from using veterans' benefits as the basis for child support orders where no such apportionment has been made or denied; and (3) should not be construed to have that as its purpose, in light of the presumption against federal intrusion into the field of family law. *Ante*, at 626–

628. I think those conclusions quite adequate to support the holding that § 3107 does not bar Tennessee from entering the order at issue here. I would not reach the question whether the State may enter a support order that conflicts with an apportionment ruling made by the Administrator, or whether the Administrator may make an apportionment ruling that conflicts with a support order entered by the State. *Ante,* at 627. Those questions are not before us, since the Administrator has made no such ruling.

Moreover, I am not at all certain that the Court answers those questions correctly. I am not persuaded that if the Administrator makes an apportionment ruling, a state court may enter a conflicting child support order. It would be extraordinary to hold that a federal officer's authorized allocation of federally granted funds between two claimants can be overridden by a state official. Congress could, I suppose, enact such a peculiar scheme, but it is at least not clear that it has done so here. Moreover, while I agree with the Court that one possible use of the Administrator's apportionment authority is to facilitate direct, separate payments of benefits to a spouse in accordance with a previous state-court order, see *ante,* at 626, I see nothing in the statute to indicate that that is the only possible use.

## II

For related reasons, I also disagree with the Court's construction of 38 U. S. C. § 211(a), which provides that "[d]ecisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision." The Court finds this inapplicable because it does not explicitly exclude *state*-court jurisdiction, as it does federal; *ante,* at 629, and because its underlying purpose of "achiev[ing] uniformity in the administration of

veterans' benefits and protect[ing] the Administrator from expensive and time-consuming litigation," *ibid.*, would not be impaired. I would find it inapplicable for a much simpler reason.

Had the Administrator granted or denied an application to apportion benefits, state-court action providing a contrary disposition would arguably conflict with the language of § 211 making his decisions "final and conclusive"—and if so would in my view be pre-empted, regardless of the Court's perception that it does not conflict with the "purposes" of § 211. But there is absolutely no need to pronounce upon that issue here. Because the Administrator can make an apportionment only upon receipt of a claim, Veterans' Administration Manual M21-1, ch. 26, ¶ 26.01 (Aug. 1, 1979), and because no claim for apportionment of the benefits at issue here has ever been filed, the Administrator has made no "decision" to which finality and conclusiveness can attach. See *Johnson* v. *Robison*, 415 U. S. 361, 367–368 (1974) (§ 211 does not bar claim that a statute regarding benefits is unconstitutional because Administrator has made no decision as to that issue). The Court again expresses views on a significant issue that is not presented.

## III

Finally, 38 U. S. C. § 3101(a) provides that "[p]ayments of benefits . . . under any law administered by the Veterans' Administration . . . made to, or on account of, a beneficiary . . . shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." The Court holds that this statute does not apply to attachments, levies, or seizures to enforce child support obligations—again on the basis that these actions would not frustrate the "purpose" of the provision. It reaches that conclusion by deducing, on the basis of legislative history and the apportionment provision, that the "purpose" of veterans' disability benefits is "in part, . . . the support of veterans' dependents." *Ante*, at 631. The

words of § 3101(a), however, extend to all use of the enumerated judicial processes ("attachment, levy, or seizure by any legal or equitable process whatever"), and I see no basis for consulting "purpose" to exclude, with no textual justification, some (but not all) state proceedings. Moreover, even if that mode of analysis is legitimate, it is not clear to me that depriving a veteran of benefits in favor of his children does not conflict with the statute's purpose. Little is proved by the statements in the House and Senate Reports that veterans' disability benefits are intended to compensate for impaired earning capacity and to provide reasonable compensation for disabled veterans and their families, *ante*, at 630, citing H. R. Rep. No. 96–1155, p. 4 (1980) and S. Rep. No. 98–604, p. 24 (1984); that intent would still be effectuated in the vast majority of situations (which is all that is needed to explain the statements) whether or not attachment for child support is allowed. These excerpts are extremely weak support for the proposition that a veteran's family has a right in the benefits, enforceable in state courts, as against the veteran— a proposition which, as JUSTICE O'CONNOR's concurrence notes, rests uneasily with our decision in *Ridgway* v. *Ridgway*, 454 U. S. 46 (1981). *Ante*, at 631. And the apportionment statute only demonstrates, at most, that Congress intended to permit children access to those benefits by means of an order of the Administrator, but says nothing about whether state courts may garnish, attach, or seize them on behalf of a veteran's children. In light of § 3101(a)'s explicit prohibition of such orders, I am reluctant to find authority to issue them.

Once again, however, this issue need not have been reached. Neither an order basing the amount of a veteran's child support obligation in part on his disability benefits nor an order that he satisfy that obligation on pain of being held in contempt is an attachment, garnishment, or seizure. Neither directs the disposition of the veteran's disability benefits or even specifically requires him to use them to satisfy his ob-

ligation. Cf. *Wissner* v. *Wissner*, 338 U. S. 655, 659 (1950) (order directing the diversion of future insurance proceeds as soon as they are made constitutes "seizure" of those proceeds). In other words, child support orders operate on the veteran's person, not on his property. They therefore are not prohibited by § 3101(a), and accordingly do not run afoul of the Supremacy Clause. I may add that this distinction between moving against property and moving against the veteran's person is not a technical and irrational one. It is one thing to prohibit a State from attaching a veteran's disability benefits to satisfy routine debts, but quite another to prohibit it from compelling him to satisfy an obligation so important to the public policy of the State that it is exempt from the State's constitutional bar on imprisonment for debt in civil cases, see Tenn. Const., Art. I, § 18; *Brown* v. *Brown*, 156 Tenn. 619, 625–626, 4 S. W. 2d 345, 346–347 (1928), permitting imprisonment to be imposed for default. See Tenn. Code. Ann. § 36–5–104 (1984).

\*     \*     \*

In sum, with respect to three of the four statutes at issue, it seems to me the Court's opinion reaches important issues that need not be decided; resolves them by a process that assumes a broad power to limit clear text on the basis of apparent congressional purpose; and even on that assumption may resolve them incorrectly. With regard to the remaining statute, 42 U. S. C. § 659(a), I agree with the analysis contained in Part II–D of the Court's opinion.

JUSTICE WHITE, dissenting.

Title 38 U. S. C. § 3101(a) provides that "[p]ayments of benefits . . . under any law administered by the Veterans' Administration . . . made to, or on account of, a beneficiary . . . shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatsoever, either before or after receipt by the beneficiary." As the Court apparently recognizes, albeit grudgingly, under *Wissner* v.

*Wissner*, 338 U. S. 655 (1950), the order that appellant pay over a portion of his veterans' disability benefits on pain of contempt constitutes a "seizure" of the benefits.[1]  The plain language of § 3101(a) prohibits *any* seizure of veterans' benefits, but the Court ignores that prohibition and creates an exception out of whole cloth, while seeming to recognize that there is no meritorious distinction between *Wissner* and this case, see *ante*, at 633–634.

The Court's decision is also inconsistent with *Ridgway* v. *Ridgway*, 454 U. S. 46 (1981).  In *Ridgway*, a state court had "attempted to limit the reach of [the anti-attachment statute concerning veterans' life insurance benefits] on the theory that the purpose of the anti-attachment provision was to protect the policy proceeds from the claims of creditors, and that the provision has no application to minor children as-

---

[1] See *ante*, at 631–632.  In *Wissner*, the Court stated:

"The judgment under review has a further deficiency so far as it ordered the diversion of future payments as soon as they are paid by the Government to the [named beneficiary].  At least in this respect, the very payments under the policy are to be 'seized,' in effect, by the judgment below. This is in flat conflict with the exemption provision contained in 38 U. S. C. § 454a, made part of this Act by 38 U. S. C. § 816: Payments to the named beneficiary 'shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. . . .'" 338 U. S., at 659.

That this was "clearly an alternative holding," *ante*, at 631–632, does not detract from the fact that it was a holding.  It was, furthermore, an entirely reasonable holding: I cannot imagine that if state courts began using their contempt power to enforce the commercial debt obligations of veterans receiving disability pay the Court would have any difficulty finding a seizure.

JUSTICE SCALIA alone attaches significance to the fact that the order in this case does not explicitly refer to appellant's disability pay.  *Ante*, at 643–644.  This argument elevates form over substance: the order holding appellant in willful contempt relied on the fact that he could comply with the support order by using his disability pay, see App. to Juris. Statement 7a–8a, and the plain effect of the order was to require appellant to pay over his disability pay or go to jail.

serting equitable interests." *Id.*, at 60–61. The Court held, however, that "[t]his contention . . . fails to give effect to the unqualified sweep of the federal statute." *Id.*, at 61. The Court attempts to distinguish *Ridgway* by asserting that there the purpose of the statute providing life insurance policies was to benefit the veteran alone, while here the veteran's disability benefits are meant to support the veteran and his family. In support of this distinction the Court cites (1) a statement, taken from the legislative history of a 1984 bill increasing disability benefits, that "the [Veterans' Affairs] Committee periodically reviews the service-connected disability compensation program with a view toward assuring that the benefits authorized provide reasonable and adequate compensation for disabled veterans and their families," S. Rep. No. 98–604, p. 24, (1984), and (2) 38 U. S. C. § 3107(a)(2), which provides for the apportionment of veterans' benefits by the Administrator when the veteran is separated from his wife or lacks custody of his children. The legislative history of the 1984 statute plainly is not intended as a comment on the scope of § 3101(a), and even if it were it would not be controlling, since it was not made in conjunction with any amendment of that statute. The fact that the Administrator can apportion benefits for the use of a veteran's family supports rather than undercuts appellant's construction of § 3101(a), because it demonstrates that, to the extent that Congress intended disability pay to benefit veterans' families, it created a mechanism for achieving that goal.[2]

Two other statutes confirm that Congress does not intend veterans' disability benefits to be subject to state-court control. In 1975 and 1977, when amending the Social Security Act to provide that, notwithstanding any contrary law, federal benefits may be garnished to satisfy a child support or

---

[2] The Court cites nothing in the record to support its concern that "to construe § 3107(a)(2) as appellant suggests could open for reconsideration a vast number of existing divorce decrees affecting disabled veterans," *ante*, at 628.

alimony obligation, see 42 U. S. C. § 659, Congress declined to extend permission to garnish veterans' disability pay, see 42 U. S. C. § 662(f)(2). Also, when Congress passed the Uniformed Services Former Spouses' Protection Act, Pub. L. 97–252, Tit. X (1982), following this Court's decision in *McCarty* v. *McCarty*, 453 U. S. 210 (1981), it permitted state divorce courts to apportion military retired pay in divorce proceedings, see 10 U. S. C. § 1408, but withheld such permission for veterans' disability pay, see 10 U. S. C. § 1408(a)(4). Of course, this case does not involve direct garnishment or apportionment of veterans' disability pay, but there is no plausible reason that Congress would have written these specific exceptions for disability pay if it contemplated that state courts would enter orders such as were entered against appellant in this case. I respectfully dissent.