*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YANN IANNUCCI,

        Plaintiff-Appellant,

v

JULIE MICHELLE JONES,

        Defendant,

and

MACOMB COUNTY FRIEND OF THE COURT,

        Appellee.

UNPUBLISHED
December 19, 2019

No. 345886
Macomb Circuit Court
LC No. 2010-006282-DM

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

The circuit court held Yann Iannucci in contempt for repeatedly failing to meet his court-ordered child support obligations. The circuit court gave Iannucci ample opportunity to prepare and present his defense that federal law precluded the use of his veterans' disability benefits for child support purposes and preempted state law to the contrary. Iannucci's defenses lacked merit, and even if he was correct, the proper avenue was to comply with the court's orders and appeal. We affirm.

## I. BACKGROUND

Yan Iannucci and Julie Jones reached a consent judgment of divorce in 2011. The couple was awarded joint legal custody of their two children. Jones had primary physical custody while Iannucci enjoyed parenting time on alternating weekends and for one dinner a week. Iannucci agreed to pay $250 per month in child support for the first six months and then to have child support evaluated by the Friend of the Court (FOC). Six months later, the FOC increased Iannucci's child support obligation to $812 per month.

-1-

Immediately after reaching the consent judgment, Iannucci launched his now-eight-year mission to eliminate his child support obligation. Throughout, Iannucci noted that he is an honorably discharged veteran supported only by veterans' disability benefits and asserted that such benefits are exempt "from invasion under any condition."

Iannucci also immediately fell behind in his payments. Contempt proceedings were initiated on several occasions and other enforcement actions were taken. In 2014, Iannucci was convicted of criminal nonsupport, a conviction that this Court affirmed. See *People v Iannucci*, 314 Mich App 542; 887 NW2d 817 (2016). Thereafter, Iannucci continued to avoid his child support obligations. As a result, monthly payments to eliminate his arrearage were added to his child support obligation. Iannucci refined his argument to assert that the circuit court lacked jurisdiction to require the invasion of his federal benefits to satisfy his child support obligation. Iannucci claimed that federal authorities regulated the benefits and preempted the field. On August 4, 2016, the circuit court rejected this argument, citing *Rose v Rose*, 481 US 619; 107 S Ct 2029; 95 L Ed 2d 599 (1987), and this Court's opinion affirming Iannucci's criminal conviction, for the proposition that the state courts had jurisdiction to deem Iannucci's veterans' disability benefits as income for child support purposes. But still, Iannucci did not comply with the court's child support order.

In 2018, the circuit court held Iannucci in contempt of court. In doing so, the circuit court noted that Iannucci's jurisdictional challenge had been decided in the criminal matter and in the court's 2016 order denying Iannucci's motion to eliminate his child support duty. The only question then before it, the court reasoned, was whether Iannucci should be held in contempt for failure to comply with the court's child support order. The answer to that question was "yes." It is from that order that Iannucci now appeals.

Iannucci hangs his hat on a September 24, 2013 letter from the Department of Veterans Affairs, denying a request to "apportion" his benefits between himself and his children. The VA "decided that the claim for an apportionment must be denied because an apportionment would cause [Iannucci] undue financial hardship" under 38 CFR 3.451. Iannucci contends that Congress amended 42 USC 659 in response to the United States Supreme Court's opinion in *Rose*, 481 US 619, holding that state courts could consider veterans' disability benefits in calculating child support awards. Michigan courts are preempted by the amended statute from treating veterans' disability benefits as income for child support purposes, Iannucci asserts.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's order holding a party in contempt, but consider underlying legal issues de novo and examine underlying factual findings for clear error. *Davis v City of Detroit Fin Review Team*, 296 Mich App 568, 623; 821 NW2d 896 (2012).

"A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High School Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998).

A person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal. Allowing such behavior would encourage noncompliance with valid court orders on the basis of misguided subjective views that the orders are wrong. There exists no place in our justice system for self-help. [*In re Contempt of Dudzinski (Grable v Brown)*, 257 Mich App 96, 111; 667 NW2d 68 (2003).]

If a party disagrees with a court's ruling or order, the proper course is to seek appellate review. Taking the matter into one's own hands and deciding not to comply with the court's orders risks criminal contempt, even if the individual is ultimately deemed correct. *Id*. at 111-112.

### III. ANALYSIS

The circuit court did not abuse its discretion in holding Iannucci in contempt. The court had repeatedly ordered Iannucci to financially support his children since August 2011. Iannucci raised his federal preemption and jurisdictional challenges in both his criminal matter and in the ongoing child custody/child support action and those challenges were rejected on both fronts. Yet, Iannucci did not appeal the circuit court's 2016 child support order after the court rejected his defense. Instead, Iannucci disobeyed the court's orders and continued to insist that his disability benefits could not be counted as income for purposes of calculating support. This was contempt and the circuit court acted well within its powers to hold Iannucci liable.

Iannucci contends, however, that the circuit court was divested of jurisdiction by federal statutes that preempt the field. MCL 552.17a(1) provides that circuit courts have "jurisdiction to make an order or judgment relative to the minor children of the parties . . . and may require either parent to pay for the support of each child." Unless an exception applies, courts must employ the FOC child support formula to calculate child support. MCL 552.605. 2017 MCSF 2.01(C)(4) includes within a parent's "income" "[m]ilitary specialty pay, allowance for quarters and rations, housing, veterans' administration benefits, G.I. benefits (other than education allotment, or drill pay)." The disability benefits at issue in this case are "veterans' administration benefits" and are therefore considered income under the formula.

The formula does not contravene preemptive federal law.

Under the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, federal law preempts state law where Congress so intends. Generally, federal law does not preempt laws governing divorce or domestic relations, a legal arena belonging to the states rather than the United States. Thus, state family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be

overridden.  [*Biondo v Biondo*, 291 Mich App 720, 725; 809 NW2d 397 (2011) (cleaned up).[1]]

As found by the circuit court, the United States Supreme Court has held that state courts may invade veterans' disability benefits that have already been distributed to the veteran as a source of income for child support purposes.  Just as in this case, the father in *Rose*, 481 US at 622, was "a totally disabled veteran" whose income was composed of veterans' disability benefits.  The trial court in *Rose* used those benefits when calculating the father's income and ordering him to pay child support.  *Id*.  Just as in this case, the father in *Rose* failed to pay and the trial court held him in contempt.  *Id*. at 623.  And the question before the Court in *Rose* is the same question before us now: "whether a state court has jurisdiction to hold a disabled veteran in contempt for failing to pay child support, where the veteran's only means of satisfying this obligation is to utilize benefits received from the Veterans' Administration."  *Id*. at 621-622.

The Supreme Court reminded in *Rose* that it had "consistently recognized that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."  *Id*. at 625 (cleaned up).  The Court continued, "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has positively required by direct enactment' that state law be pre-empted.  Before a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests."  *Id*. (cleaned up).

Relevant to the current appeal, the veteran father in *Rose* relied upon 42 USC 659(a), which then provided:

> "Moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States . . . to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States . . . were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support . . . ."  [*Rose*, 481 US at 634, quoting 42 USC 659(a) (1982).]

The Court interpreted this provision as creating "a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies," *Rose*, 481 Mich at 635, not to assist veterans in avoiding child support obligations calculated on funds already disbursed from the agency to the individual: "[W]hile it may be true that these funds are exempt from garnishment or attachment while in the hands of the Administrator, we are not persuaded that once these

---

[1] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

funds are delivered to the veteran a state court cannot require that veteran to use them to satisfy an order of child support." *Id.*

Nine years after *Rose*, Congress amended 42 USC 659 to add section (h)(1)(B)(iii). This provision states, that "[m]oneys subject to process . . . do not include any payment . . . of periodic benefits under title 38, United States Code," i.e., veterans' benefits. Iannucci contends that Congress added this provision in response to *Rose* to eliminate the authority of state courts to calculate income based on veterans' disability benefits. However, there is no indication in the statute or the legislative history to support this proposition. We could locate no caselaw in any jurisdiction interpreting 42 USC 659(h)(1)(B)(iii) in the manner suggested. Compare *Matter of Nieves v Iacono*, 162 AD3d 669, 669-670; 77 NYS3d 493 (2018) (citations omitted) ("Contrary to the father's contention, federal law does not prohibit the inclusion of veterans disability benefits as income in calculating a veteran's child support obligation. Although veterans benefits are exempt from many claims, 42 USC 659(a) specifically provides that this exemption does not apply to child support obligations."). The passage of almost a decade between the resolution of *Rose* and the amendment of 42 USC 659, and more than 20 years since the statutory amendment with no change in judicial approach, makes any connection between subsection (h)(1)(B)(iii) and *Rose* attenuated at best. And it remains true that the state court did not enter any order of garnishment; rather, it ordered the use of the veterans' benefits already disbursed to Iannucci in calculating Iannucci's income.

Iannucci also cites 38 USC 5301(a)(1) as precluding the calculation of child support based on his veterans' disability benefits. The statute provides that "[p]ayments of benefits . . . shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." However, the Supreme Court in *Rose* rejected this argument as well:[2]

> Though the legislative history for this provision is also sparse, it recognizes two purposes: to avoid the possibility of the Veterans' Administration being placed in the position of a collection agency and to prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income. Neither purpose is constrained by allowing the state court in the present case to hold appellant in contempt for failing to pay child support. The contempt proceeding did not turn the Administrator into a collection agency; the Administrator was not obliged to participate in the proceeding or to pay benefits directly to appellee. Nor did the exercise of state-court jurisdiction over appellant's disability benefits deprive appellant of his means of subsistence contrary to Congress'[s] intent, for these benefits are not provided to support appellant alone. [*Rose*, 481 US at 630 (cleaned up).]

---

[2] When *Rose* was decided, the pertinent language of 38 USC 5301(a)(1) was located in 38 USC 3101(a).

Iannucci asserts that the circuit court's jurisdiction was preempted by 38 USC 511, too. Subsection 511(a) provides that the Secretary of the Veterans' Department "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." As evidenced by the letter provided by Iannucci, the secretary determined that the department could not apportion his veterans' disability benefits between himself and his children because this would cause an undue financial hardship to Iannucci. Although the *Rose* Court did not consider the preemptive power of 38 USC 511, the Court's analysis regarding § 659 is persuasive. Under the support order and the contempt finding, the secretary's decision is left untouched as Iannucci is provided the exact same amount of benefits. "[O]nce those funds [were] delivered to the veteran," the circuit court was free to consider them as income that could be used "to satisfy an order of child support." *Rose*, 481 US at 635.

As the circuit court repeatedly decided in this case, the federal statutes do not prevent state courts from considering veterans' disability benefits as income in calculating child support and the federal statutes do no preempt state law in this field. The circuit court had jurisdiction to consider this issue and did not err. Accordingly, Iannucci is not entitled to relief and the civil contempt order must stand.

## IV. JUDICIAL DISQUALIFICATION

Iannucci also raises several complaints about the trial judge assigned to his case—Macomb Circuit Court Judge Mark Switalski—as well as the Macomb County Friend of the Court. We will address these claims as a request for judicial disqualification on remand.

Iannucci contends that Judge Switalski has a pecuniary interest in this matter. A judge must disqualify him or herself from a matter in which he or she "has a pecuniary interest in the outcome." *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). We are aware of no state policy that provides kickbacks to trial court judges based on the amount of child support awarded. Iannucci contends that 42 USC 658(4)(D) "allows for federal incentive payments to be received by the state and friend of the court for monies collected for child support." The cited statute was repealed and certain provisions moved to 42 USC 655. Under either state, this is not a money-making venture. Rather, the federal government provides grants to the states to cover a percentage of the cost of running FOC systems.

Iannucci accuses Judge Switalski (and the FOC) of fraud and identity theft. This claim stems from April 11, 2012 and May 2, 2017 "income withholding orders" naming the "Employer/Income Withholder" as "Department of Veterans Affairs Civilian" and a September 10, 2013 order identifying the "Employer/Income Withholder" as "Michigan Unemployment Insurance Agency." Iannucci suspects fraud because he was not a civilian employee of the federal government and never collected state unemployment benefits. The purpose of the income withholding orders was to notify entities providing funds to Iannucci to withhold certain amounts to cover Iannucci's child support obligation. If Iannucci did not collect unemployment benefits, the Michigan Unemployment Agency could not withhold any payments and Iannucci suffered no prejudice. It is possible that Iannucci's designation as a civilian employee of the Department of Veterans Affairs was a mischaracterization by an FOC employee who was

otherwise uncertain how to categorize the disabled veteran. Again, Iannucci was not prejudiced by this classification. Accordingly, his challenges lack merit.

Iannucci also accuses Judge Switalski of allowing out-of-state attorneys to practice in Michigan without being admitted to our bar. This bizarre assertion arises from Judge Switalski's review of legal treatises in researching Iannucci's claims that his veterans' disability benefits could not be calculated as income. Judges and lawyers frequently refer to legal treatises to increase their knowledge base. When faced with an infrequently occurring legal issue, like that presented in this matter, continuing education is required. The alternative would be to have important legal questions arbitrarily resolved by uneducated jurists. Certainly no party would prefer this alternative. And ultimately, there is no legal requirement that the author of such treatises be licensed to practice in the state of the judge.

Iannucci challenges "the credibility" of the FOC based on earlier child custody and parenting time recommendations. Iannucci impugns Jones's mental health, accuses her of abusing and neglecting their children, and complains that the FOC and circuit court did not adequately enforce parenting time orders. However, a parent may not withhold child support as retribution for the other parent's parenting time violations or as vengeance for losing a custody battle. Child custody and parenting time are separate and distinct issues from child support. If Iannucci was displeased with the orders denying his motion to change custody and to enforce parenting time, he should have appealed those rulings. See *Ewald v Ewald*, 292 Mich App 706, 718-719; 810 NW2d 396 (2011); *Rzadkowolski v Pefley*, 237 Mich App 405, 409; 603 NW2d 646 (1999).

Finally, Iannucci opines that the circuit court and FOC were driven by "[d]iscrimation against the veterans [sic] . . . to procure fiduciary and pecuniary gains." There is no record indication that any state actor held any discriminatory animus against Iannucci as a veteran. Rather, all parents, whether or not a disabled veteran, must support their children. Iannucci had funds from which he could support his children and was required to use them. It was not discrimination to impose a child support obligation.

We affirm.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher