83 N.Y.2d 65 (1993)
629 N.E.2d 378
607 N.Y.S.2d 906
In the Matter of Steven D. Rose, as Commissioner of the Oswego County Department of Social Services, on Behalf of Edith L. Clancy, Appellant,
v.
Kimberly L. Moody, Respondent. Attorney-General of the State of New York, Intervenor-Appellant.
Court of Appeals of the State of New York.
Argued November 18, 1993.
Decided December 20, 1993.
The Seiter Law Firm, Mexico (Kevin C. Caraccioli of counsel), for appellant.
Robert Abrams, Attorney-General, Albany (John McConnell, Jerry Boone and Peter H. Schiff of counsel), for intervenor-appellant.
Heidi Siegfried, Oswego, and Frederick M. Stanczak, Syracuse, for respondent.
Wayne G. Hawley, New York City, Beth L. Andersen, Michelle D. Schreiber, John F. Castellano, Katharine A. Clemens, Gerald B. Liu and Thomas Maligno, Islandia, and Jane C. Reinhardt for MFY Legal Services, Inc., and another, amici curiae.
Chief Judge KAYE and Judges SIMONS, TITONE, HANCOCK, JR., and SMITH concur with Judge BELLACOSA; Judge LEVINE dissents and votes to reverse in a separate opinion.
*67 BELLACOSA, J.
Respondent mother has custody of two of her children and subsists on Social Services financial aid. Family Court rejected petitioner Oswego County Social Services Commissioner's objections to the Hearing Examiner's findings and determination that the respondent mother's child support obligation for her third, noncustodial child was $0. The Commissioner and intervenor Attorney-General of the State of New York appeal as of right on constitutional grounds from the Appellate Division's order affirming Family Court. They argue that New York's Family Court Act § 413 (1) (g), which conclusively fixes a minimum $25 per month floor in all cases, is not preemptively nullified by any conflict with Federal law 42 USC § 667, which mandates a rebuttable presumption in all such instances. We disagree and affirm the determination of both lower courts in favor of the respondent indigent mother.
Where a Federal statute facially clashes with a State statute, the Federal statute must triumph. New York State's Family Court Act § 413 (1) (g) creates an irrebuttable presumption imposing, in cases like this one, a $25 per month floor on all child support obligations up to an accumulated debt of $500. Thus, it flatly contradicts the enabling legislation, 42 USC § 667, that commands an opportunity in all cases to rebut and drop the support award floor to $0, when impoverished circumstances so dictate.

*68 I.
Respondent has three children. At the commencement of this proceeding, her two-year-old twins lived with her; her first born, Robert, age 4, lived with his grandmother. He is, thus, a noncustodial child for purposes of section 413 (1) (g) of the Family Court Act. The mother and her children are entirely dependent upon the Department of Social Services for financial living assistance.
In January 1991, the Oswego County Department of Social Services filed a petition for support against the mother on behalf of the grandmother and the noncustodial child, Robert. The Family Court Hearing Examiner found against the Commissioner and directed an award of $0 per month in child support against the mother for Robert. The mother's income, pursuant to Family Court Act § 413 (1) (b) (5), was determined to be $0 annually. Her basic child support obligation under the formula of the Child Support Standards Act (L 1989, ch 567, amending Family Ct Act art 4 ["Support Proceedings"]) was 17% of $0, which, of course, equals $0. He further determined that even though $0 is less than the poverty level, application of the New York State guidelines nevertheless would mandate a minimum child support obligation against her in the sum of $25 per month (Family Ct Act § 413 [1] [g]). The Hearing Examiner concluded that application of the mandatory minimum monthly award would be unjust and inappropriate, since the mother and her two custodial children were themselves recipients of public assistance.
Family Court upheld the findings of fact and the determination of the Hearing Examiner. The Appellate Division unanimously concluded that the Federal Child Support Enforcement Act prohibits a State from creating a "conclusive presumption that $25 is the correct amount of child support to be awarded, regardless of the parent's means and circumstances" (Matter of Rose [Haney] v Haney, 188 AD2d 999, 1000). While it agreed with Family Court that the imposition of an uncollectible support figure would be unjust and inappropriate, it added that the conclusively mandated minimum award was also preempted by Federal law.

II.
The County and intervenor assert a constitutional basis to support the appeal as of right. They argue that Family Court Act § 413 (1) (g) *69 avoids the constitutional preemption conflict of an irrebuttable mandatory minimum of $25 per month as an obligation of child support against any noncustodial parent, because the figure is a justifiable, albeit pro forma, public policy message, not a true collectible obligation. 42 USC § 667 (b) (2) provides that the amount of an award under State child support guidelines shall be presumed correct, subject to rebuttable criteria established by the State which allow noncustodial parents to show inability to pay. By establishing an irrebuttable minimum of $25, even though concededly uncollectible and solely "to send a uniform public policy message," the State treads on the Federal mandate which gives a noncustodial parent the right to rebut any presumed support amount, all the way down to zero, by showing inability to pay. Thus, while a substantial constitutional question is directly involved in this appeal, we resolve the issue against the appellants.
New York participates in the Federally funded reimbursement program designed to foster child support payments from noncustodial parents. The program promulgates national standards and guidelines. Pursuant to Federal statute, each participating State is required to adopt State-wide guidelines in connection with child support awards as a condition for the State's receipt of Federal funds under 42 USC §§ 654 and 655. New York has, thus, subjected itself to full compliance with the national regime by accepting Federal funds, a factor the dissent does not take cognizance of or credit.
Section 103 (a) of the United States Family Support Act of 1988 (amending 42 USC § 667 [entitled "State guidelines for child support awards"]) states in pertinent part:
"(2) There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case" (42 USC § 667 [b]).
The New York State Legislature in 1989 enacted the Child *70 Support Standards Act (L 1989, ch 567, amending Family Ct Act art 4 et seq.) pursuant to the enabling United States Family Support Act. The New York implementation opens with a provision that parents with sufficient means or ability to acquire such means shall be required to pay child support pursuant to the established guidelines (Family Ct Act § 413 [1] [a]).
Section 413 (1) (c) of the Family Court Act provides for application of guidelines based on a pro rata share of a certain percentage of the combined parental income. "Income", defined at section 413 (1) (b) (5), does not include public assistance. The respondent mother's circumstances are such that her entire income is derived from public assistance. Thus, for purposes of the Family Court Act, she has $0 income. Family Court Act § 413 (1) (f) prescribes factors for deciding whether a guideline award is "unjust or inappropriate," and details the criteria or factors that should provide a basis to rebut the presumptive guidelines. For example, the financial resources of the custodial and noncustodial parent and those of the child are pertinent (Family Ct Act § 413 [1] [f] [1]). Also relevant are the financial needs of any children of the noncustodial parent not subject to the particular support proceeding. A comparative resources analysis of the respective support needs of the custodial children and the noncustodial child who is the subject of the proceeding is also appropriate (Family Ct Act § 413 [1] [f] [8]).
In this case, the mother has satisfied one unassailable criterion to overcome the presumption that would require her to be obligated for support of her noncustodial son (see, Family Ct Act § 413 [1] [f]). She is indigent and needs Social Services financial assistance for herself and her twin custodial children. Since she has nothing, she can pay nothing. For a judicial decree to declare that she, nevertheless, owes what she cannot realistically or legally pay is not only unjust and inappropriate, it is a legal pretense. The Family Court Act paradigm erects a facial, not implied, contradiction because the proviso in section 413 (1) (g), that even where a guideline award is rebutted as unjust or inappropriate it must still result in a minimum award of no less than $25 per month. The prescribed national norms expressly provide for a substantively different mechanism.
Family Court Act § 413 (1) (g) states in pertinent part:
"Where the court finds that the non-custodial *71 parent's pro rata share of the basic child support obligation is unjust or inappropriate, the court shall order the non-custodial parent to pay such amount of child support as the court finds just and appropriate, and the court shall set forth, in a written order, the factors it considered; the amount of each party's pro rata share of the basic child support obligation; and the reasons that the court did not order the basic child support obligation * * * In no instance shall the court order child support below twenty-five dollars per month. Where the non-custodial parent's income is less than or equal to the poverty income guidelines amount for a single person as reported by the federal department of health and human services, unpaid child support arrears in excess of five hundred dollars shall not accrue" (emphasis added).
Family Court observed that "[t]o require her to pay $25.00 per month in support towards her noncustodial child lowers her current monthly [public assistance] cash allotment from $126.00 to $101.00, a substantial percentage decrease, and, arguably a penalty per se for being a public charge." Since New York otherwise immunizes public assistance recipients from levy and execution of judgments against them, including judgments for child support (see, Social Services Law § 137; Consumer Credit Corp. v Lewis, 63 Misc 2d 928), the appellants' sought-after decree of a support obligation would be a mere showpiece.
Appellants also advocate that the interoperative effect of Family Court Act § 413 (1) (g) with Social Services Law § 137 clearly and manifestly excuses a chargeable parent without income, such as the respondent mother here, from any real payment obligation to any child. This position highlights the insurmountable problems of their argument that Family Court Act § 413 (1) (g) may be de facto harmonized with its Federal source statute, while de jure contradicting it on its face and in its inevitable application.
The Appellate Division affirmed in this case, stating because 42 USC § 667 (b) (2) "directly prohibits a State from enacting child support guidelines which permit no rebuttal of the amount awarded, we conclude that the provision in Family Court Act § 413 (1) (g) mandating a $25 minimum award is *72 preempted under the Supremacy Clause" (Matter of Rose [Haney] v Haney, 188 AD2d 999, 1000). We agree with that Court that this is "directly prohibit[ed]," and that a perfunctory, legally noncollectible judicial order of support is not authorized and would send wrong messages. It would degrade the value and integrity of the judicial decree, and it would unjustly and unaccountably brand the respondent parent a deadbeat.
Appellants' argument that Family Court abused its discretion is unavailing. So, too, is their claim that despite the fact that any percent of zero will inevitably equal zero, Family Court Act § 413 (1) (g) somehow constitutionally survives. The New York scheme cannot support a de jure irrebuttable presumption for the mandatory imposition of a minimum $25 per month statement of obligation against an indigent noncustodial parent.
The order of the Appellate Division should be affirmed, with costs.
LEVINE, J. (dissenting).
I respectfully dissent. In my view, respondent has not satisfied her heavy burden of establishing the facial invalidity of the provision in New York's Child Support Standards Act (L 1989, ch 567) mandating a minimum court-ordered child support obligation of a noncustodial parent of $25 a month (Family Ct Act § 413 [1] [g]), regardless of whether the application of the statutory child support guidelines would result in a lower amount, or whether a court might find that the statutory minimum support award was unjust or inappropriate in a given case. Contrary to the conclusion of the Appellate Division and the majority here, section 103 of the Federal Family Support Act of 1988 (42 USC § 667 [b] [2]) does not expressly prohibit a State from imposing a statutory minimum child support obligation.
The Federal statute requires the States to establish support guidelines (42 USC § 667 [a]). It provides that, in any judicial or administrative child support proceeding "[t]here shall be a rebuttable presumption * * * that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded" (42 USC § 667 [b] [2]). The Federal statute further provides that the presumption may be rebutted in a given case by a finding "that the application of the guidelines would be unjust or inappropriate", under criteria established by the State (id. [emphasis supplied]; see, Family Ct Act § 413 [1] [f]). As the *73 quoted portion of the Federal statute shows, the rebuttable presumption of section 667 (b) (2) does not deal directly with a State's minimum child support level imposed irrespective of "the application of the guidelines" (id.). The majority infers, however, that because section 667 stipulates that the presumption of the correctness of an award pursuant to the State guidelines is rebuttable, Congress must have intended to bar any irrebuttable statutory minimum award. Thus, it is only by implication that the Federal statutory rebuttable presumption of a parental ability to pay a support award under the guidelines may be found to conflict with the mandatory $25 a month minimum child support award provision of the New York statute.
An individual attempting to establish the facial invalidity of a State statute under the Supremacy Clause (US Const art VI) by reason of an implied conflict with a Federal statute faces serious hurdles. First, as in any facial challenge to the constitutionality of a statute (except perhaps on First Amendment grounds) it must be demonstrated "that no set of circumstances exists under which the Act would be valid" (United States v Salerno, 481 US 739, 745; see also, Schall v Martin, 467 US 253, 268-269, n 18).
When the invalidity of a State statute is asserted because of a conflict with Federal law, it must be established that "`it is impossible to comply with both state and federal law, * * * or [that] the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress'" (California Coastal Commn. v Granite Rock Co., 480 US 572, 581). Moreover, "[t]his inquiry requires [a court] to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written" (Jones v Rath Packing Co., 430 US 519, 526 [emphasis supplied]).
Finally, and most importantly, the constitutional standard for preemption applicable here is especially severe, under long-established principles, because New York's Child Support Standards Act deals with "`the domestic relations of husband and wife, parent and child, [a subject which] belongs to the laws of the States and not to the laws of the United States'" (Rose v Rose, 481 US 619, 625 [quoting In re Burrus, 136 US 586, 593-594]). The Supreme Court has mandated exceptional deference to the States in matters regarding child support (481 US, at 628). "On the rare occasion when state family law has come into conflict with a federal statute, this Court has *74 limited review under the Supremacy Clause to a determination whether Congress has `positively required by direct enactment' that state law be pre-empted" (Hisquierdo v Hisquierdo, 439 US 572, 581 [quoting Wetmore v Markoe, 196 US 68, 77]). "A mere conflict in words is not sufficient. State family * * * law must do `major damage' to `clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." (439 US, at 581, quoting United States v Yazell, 382 US 341, 352 [emphasis supplied].)
The purported conflict between Family Court Act § 413 (1) (g) and 42 USC § 667 (b) (2) simply does not meet those exacting standards for preemption. Taken literally, 42 USC § 667 (b) (2) merely insures that either the noncustodial or the custodial parent has the opportunity to demonstrate that strict application of a State's child support guidelines is unjust or inappropriate, by showing that the resultant award is too onerous or insufficient to meet the child's needs, according to the State criteria. As already demonstrated, 42 USC § 667 (b) (2) does not directly address a State's imposition of a minimum child support obligation independent of any application of its guidelines. Thus, it has not even been conclusively shown here that there is a "conflict in words" between the Federal and State enactments at issue.
Nor does providing for a statutory minimum obligation of child support impair in any significant way the "clear and substantial" Federal interests and policies underlying the Family Support Act of 1988. Those policies and interests were "to restructure the basic program of public assistance for families in ways that emphasize parental responsibility through the enforcement of child support" (S Rep No. 100-377, 100th Cong, 2d Sess, reprinted in 1988 US Code Cong & Admin News 2776, 2778 [emphasis supplied]). The section mandating the presumptively binding effect of State child support guidelines is referred to collectively with other sections as "designed to strengthen the child support enforcement program" (id., at 2779 [emphasis supplied]). Providing for a statutory minimum child support award of $25 a month surely does not do "major damage" to these primary congressional policies and Federal interests reflected in the Family Support Act of 1988. The absence here of any significant deviation from congressional policies and Federal interests is further demonstrated by the approval by the Secretary of Health and Human Services of the New York child support enforcement program through its Child Support Standards *75 Act. Congress charged the Secretary with the responsibility of reviewing, approving and auditing State child support enforcement programs to insure their conformity with the Federal Family Support Act (42 USC § 652).
Finally, any purported conflict with section 667 (b) (2) of the Federal statute is even more remote when one considers the interpretation and application of Family Court Act § 413 (1) (g) in conjunction with other State statutory provisions. Thus, by reason of statutory exemptions contained in Social Services Law §§ 137 and 137-a, respondent, whose exclusive source of income is receipt of public assistance, is not subject to present enforcement of the $25 a month minimum court-ordered child support obligation for her child living outside of her home. Moreover, Family Court Act § 413 (1) (g) further provides, in the case of a noncustodial parent whose income "is less than or equal to the poverty income guidelines amount for a single person", the accrual of arrears on respondent's child support obligation is statutorily limited to an aggregate of $500. Thus, the net effect of the minimum child support award mandated under this State's Child Support Standards Act is an accumulation of arrears of $25 a month to a maximum of $500, payment of which is unenforceable until respondent has attained some financial ability to pay child support. The conflict between this deferred obligation to pay child support arrears not exceeding $500 and the rebuttable presumption of 42 USC § 667 (b) (2) is thus so remote as to become, at worst, de minimis.
For all the foregoing reasons, I would reverse the order of the Appellate Division and remit this proceeding to the Family Court of Oswego County for the fixing of an appropriate award of support pursuant to the provisions of Family Court Act § 413.
Order affirmed, with costs.