DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Joseph and Nancy Cardone were married on April 28, 1956. On July 19, 1994, Nancy brought an action for legal separation against Joseph. The trial court found, for the purposes at hand, that the marriage terminated on the date of trial, which took place on April 16 and April 17, 1996.
Joseph, a veteran, had been declared completely disabled by the Veteran's Administration in March 1980. From that point, Joseph received monthly disability checks from the Veterans's Administration ("V.A. disability checks") which gradually increased from $1,000 to $1,979 at the date of trial. Joseph purchased thirty-four United States Savings Bonds with a value of $310,000, a Western and Southern annuity with a value of $21,739.72, a Prudential annuity with a value of $15,225.70, and another Prudential annuity with a value of $154,618.30. The trial court found that these assets constituted marital property. The trial court also found that from April 2, 1993, to June 8, 1994, Joseph deposited funds into his separate Falls Savings and Loan account in amounts corresponding to the amounts of his V.A. checks. The court determined that these funds constituted Joseph's separate property.
The trial court issued a separation decree on December 23, 1996, which divided the parties' property and awarded spousal support of $600 per month to Nancy. Joseph appeals from the separation decree, assigning six errors.
On April 24, 1997, Nancy moved the trial court to hold Joseph in contempt for his failure to transfer assets and to pay spousal support. On June 30, 1997, the magistrate found Joseph to be in contempt, and recommended that he be jailed for twenty-four days unless he purged himself of contempt by paying spousal support owed and transferring property he was ordered to transfer in the separation decree. On July 31, 1997, the trial court overruled Joseph's objections to the magistrate's report. Joseph appeals from the judgment holding him in contempt, assigning seven errors.
This court consolidated Joseph's two appeals, and now affirms the trial court's judgment in each case. We will discuss in Part I of this opinion the errors Joseph assigns in his appeal from the separation decree, and in Part II of this opinion the errors he assigns from the contempt judgment. In both discussions, the sequence of the assignments of error has been rearranged for ease of presentation.
 I.A.
Joseph's fifth assignment of error states:
 The Court Erred in Dividing the Property Without Considering the Tax Consequences of the Division.
Joseph argues that the trial court awarded United States bonds titled in Joseph's name to Nancy, which results in tax consequences to Joseph in the event those bonds are either cashed in or reissued in Nancy's name. Joseph asserts that the trial court thus breached its statutory duty, pursuant to R.C.3105.171(F)(6), to consider the tax consequences of its property division.
Joseph points to no evidence in the record to support his claim as to tax consequences of the property division. The sole "evidence" Joseph indicates are his Exhibits F and FF, neither of which was admitted into evidence by the trial court. A reviewing court cannot consider an exhibit unless the record demonstrates that the exhibit was formally admitted into evidence in the lower court. State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus; Moore v. Nichol (Oct. 30, 1991), Summit App. No. 15062, unreported, at 9. Thus, we may not consider Exhibits F and FF as part of this appeal.
We also note that the trial court in its order stated that it considered all the statutory factors contained in R.C.3105.171(F). Joseph's fifth assignment of error is overruled.
 B.
Joseph's fourth assignment of error states:
 The Trial Court Erred in Holding That the Defendant-Husband Had Failed to Trace His Veterans Administration Disability Benefits to the U.S. Government Bonds, the Prudential Insurance Company Annuities, and the Western and Southern Annuity and in Holding That These Assets Were Marital Property.
Joseph contends that the bonds and annuities referred to in his assignment of error are proceeds from his V.A. disability checks and are his separate property, and that the trial court's conclusion to the contrary was against the manifest weight of the evidence.
Joseph testified that he would deposit his V.A. disability checks into the parties' joint checking account in the First National Bank. He then would withdraw the corresponding funds from that account and deposit them into his separate Falls Savings and Loan account. When sufficient funds had accumulated in the Fall Savings account, Joseph would acquire a cashier's check from the First National Bank, which he would then use to purchase the various instruments at issue. At trial, Joseph submitted as evidence a grocery bag full of First National Bank checking account statements from the years in question. On those statements, the amounts deposited and withdrawn had been altered by Joseph. Joseph testified that he scratched out the amounts at the time he received the statements in order to conceal these transactions from Nancy. He testified that he then wrote the correct amounts on the statements in red ink.
In support of his position, Joseph also points toward the testimony of a Prudential agent and of an insurance salesman from Western and Southern, with whom Joseph dealt in purchasing the annuities, that at the time of purchase Joseph had said that he was using his V.A. money.
In reviewing a judgment in a civil case that is alleged to be against the weight of the evidence, a court will only reverse when it "is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice." Jacobs v.Benedict (1973), 39 Ohio App.2d 141, 144, quoting 3 Ohio Jurisprudence 2d (1953) 817, Appellate Review, Section 819. The judgment of the trier of fact is only to be disturbed when "it clearly appears that the conclusion reached cannot be supported by any rational view of the evidence." Id. at 144-145. Thus, an appellate court cannot reverse a judgment in a civil action if it is "supported by some competent, credible evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280. Grange Mut. Cas. Co. v. Biehl (Mar. 11, 1998), Summit App. No. 18304, unreported, at 3-4.
The trial court's conclusion that the funds used by Joseph to purchase the instruments at issue were not traceable to Joseph's V.A. disability checks is not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Joseph does not dispute the trial court's observations that "there are years when he claims his V.A. check was for an amount of money in excess of what the V.A. states he was receiving at that time" and "the amounts deposited never matched the exact amount payable to [Joseph] from the V.A. for any year in question as reflected in [Joseph's] Exhibit DD." Further, the trial court found that, even assuming that the amounts Joseph wrote on the altered checking account statements were accurate, there was no paper trail showing where the withdrawals went once they left the First National bank joint checking account.[1]
We cannot agree with Joseph's contentions that "[t]he scratches traced the money" and that Joseph's status as a "notorious `scratcher outer'" who "is probably incapable of offering a clean document to his counsel or to the Court" establish the injustice of the trial court's conclusion that the bonds and annuities are marital property. Joseph's fourth assignment of error is overruled.
 C.
Joseph's first assignment of error states:
 The Trial Court Erred in Awarding Spousal Support in the Amount of $600.00 Per Month to the Plaintiff-Wife.
The trial court awarded $600 per month spousal support to Nancy, to last until either party dies or Nancy marries. Joseph claims that the trial court erred by making an unreasonable award of spousal support, by awarding spousal support despite Nancy's lack of need, and by failing to consider that Nancy's award of $536,674 in intangible property could be income producing.
A trial court has broad discretion in fashioning a spousal support award and its decision will not be reversed absent an abuse of that discretion. See Bechtol v. Bechtol (1990), 49 Ohio St.3d 21,24. This court has previously held that under R.C.3105.18, as modified in April, 1991, "need" is no longer the basis for a spousal support award. Bettis v. Bettis (Feb. 12, 1997), Medina App. No. 2565-M, unreported, at 3-4.
The only relevant question is what is "appropriate and reasonable" under the circumstances. R.C. 3105.18(C)(1). Joseph argues that the order of spousal support is unreasonable because he is disabled and likely in the future to need assisted living, and because Nancy has been awarded $536,674 and retains her social security income, as well as rental income, and can still work part-time as a real-estate salesperson.
The trial court found that Nancy was sixty-four years old, suffers from high blood pressure, high cholesterol, arthritis, emotional stress, and has had three cataract operations in recent years. Nancy was taking "a variety of medications on a regular basis for her various health problems." Nancy had made $9,000 as a realtor in 1994, $5,000 in 1995, and nothing in 1996 at the time of the trial. She was to begin receiving social security benefits of $710 per month in 1997, a few months before monthly income of $900 from a note receivable would cease. Nancy had been receiving $445 in net monthly rental income. Nancy's monthly expenses were $2,749.68.
In light of these facts and the fact that Joseph was awarded about $430,000 in the property division, all in intangible property which could be income producing, we cannot find the trial court's award of $600 per month spousal support to Nancy to be an abuse of discretion. Joseph's first assignment of error is overruled.
 D.
Joseph's second assignment of error states:
 Assuming That Some Spousal Support Should Have Been Awarded to the Plaintiff Wife, the Court Erred Under Both Federal and Ohio Law in Including Veteran's Administration Disability Benefits in its Calculation of "Income" to the Defendant-Husband.
Joseph argues that the trial court acted contrary to federal and state law by considering his V.A. disability benefit in calculating his income for the purposes of determining his spousal support obligation. We disagree on both counts.
Contrary to Joseph's contentions, federal law does not pre-empt the trial court's action in this case. In Rose v. Rose
(1987), 481 U.S. 619, 95 L.Ed.2d 599, the United States Supreme Court discussed decisions in which it held that state domestic relations courts were pre-empted by federal statutes containing prohibitions against attachment, levy, or seizure of federal benefits, and distinguished them on the grounds that in each case the federal statute precisely specified the intended beneficiary in a manner conflicting with state domestic relations law. Id., 481 U.S. at 631-633, 95 L.Ed.2d at 611-612. The Court concluded that V.A. disability benefits are intended by Congress to provide compensation for disabled veterans and their families. Id.,481 U.S. at 630-634, 95 L.Ed.2d at 610-6113 Therefore, recognizing an exception to the application of Section 3101(a), Title 38, U.S. Code [now Section 5301, Title 38, U.S. Code], which prohibits attachment, levy, or seizure of V.A. disability benefits, would further rather than undermine the federal purpose in providing the benefits. Id., 481 U.S. at 634, 95 L.Ed.2d at 613. Thus, concluded the Court, Section 3101(a) does not protect a veteran's disability benefit from an otherwise valid order of child support.Id.
Joseph argues that the same federal statute discussed in Rose
protects his V.A. disability benefit from an otherwise valid order of spousal support. A veteran's spouse being as much a part of his or her family as the veteran's children, the logic of Rose
must extend to spousal support as well as child support, as the Court indeed suggested. See 481 U.S. at 631-632,95 L.Ed.2d at 611-612.
The federal statutory obstacle removed, the question remains as to whether the trial court complied with state law in using his V.A. benefits to calculate his income for spousal support purposes. Both parties presume that the calculation of income for spousal support purposes is governed by R.C. 3113.215(A)(2), which defines "gross income" for child support purposes to include V.A. disability benefits "received by and in the possession of the veteran" but to exclude benefits "that have not been distributed to the veteran * * * and that are in the possession of the United States department of veterans' affairs or veterans' administration."
However, the statute which governs spousal support, R.C.3105.18, refers only to the "income of the parties." R.C.3105.18(C)(1)(a). Thus, as the statutes are written, the trial court acts within its discretion to arrive at amounts of spousal support and child support based upon different calculations. SeeFrost v. Frost (1992), 84 Ohio App.3d 699, 720; Russell v. Carr
(June 15, 1995), Cuyahoga App. No. 66104, unreported. Joseph has demonstrated no error of law committed by the trial court in considering his V.A. disability benefits for the purpose of calculating spousal support. Joseph's second assignment of error is overruled.
 E.
Joseph's third assignment of error states:
 Assuming That Spousal Support Should Have Been Awarded to the Wife, the Trial Court Also Erred in Considering the Husband's Social Security Benefits, Which Are Based On a Previous Social Security Disability, As Income for Purposes of Calculating Spousal Support.
Joseph was receiving social security retirement benefits prior to the present action. In determining the amount and propriety of spousal support, the trial court is obligated to consider the retirement benefits of the parties. R.C.3105.18(C)(1)(d). Ohio courts have included social security retirement benefits in this calculation. See Lemon v. Lemon
(1988), 42 Ohio App.3d 142, 144; Beyer v. Beyer (1979), 64 Ohio App.2d 280,284; and Brown v. Brown (1972), 32 Ohio App.2d 139,141. Joseph argues that federal law pre-empts the trial court's consideration of his social security retirement benefits as income for the purposes of determining spousal support. We disagree.
As Joseph asserts, Section 407(a), Title 42, U.S. Code provides that the right to future social security payments is not assignable or transferable, and that monies paid or payable shall not be subject to execution, levy, attachment, garnishment or other legal process. Subsection (b) of that statute provides that no other provision of law may modify the provisions of the statute except to the extent that it does so by express reference to Section 407. Section 659(a) of the same statutory chapter expressly refers to Section 407 and provides that social security retirement benefits are subject to legal process for enforcement of the recipient's obligations to provide spousal support. Joseph's third assignment of error is overruled.
 F.
Joseph's sixth assignment of error states:
 The Court Erred in Failing to Grant the Defendant-Husband's Motion for a New Trial.
After the trial court rendered judgment in this matter, Joseph moved for a new trial on the grounds that 1) the trial court's finding that the United States savings bonds, the Prudential and Southern and Western annuities, and the Falls Savings account are marital property was contrary to law and unsustained by the weight of the evidence; and 2) the trial court's inclusion of Joseph's V.A. disability payments and social security benefits as income for the purpose of computing spousal support was contrary to law. The trial court denied the motion. For the reasons set forth in our discussions supra of Joseph's second, third, and fourth assignments of error, we overrule Joseph's sixth assignment of error.
 G.
Having overruled Joseph's six assignments of error, we affirm the judgment of the trial court ordering legal separation, dividing and awarding marital property, and ordering spousal support.
 II.A.
Joseph's motions for a stay of the enforcement of the judgment were denied by the trial court on February 12, 1997, and by this court on February 26, 1997. On April 24, 1997, Nancy moved the trial court to hold Joseph in contempt, alleging that Joseph had willfully failed to transfer to her items of personal property and other assets, and that Joseph had willfully failed to pay spousal support. The motion also contained notice of a hearing to be conducted on June 5, 1997, at 9:00 a.m., and notice that if Joseph were "found guilty of contempt for failure to pay support," he could be sentenced to a fine or imprisonment.
On April 29, 1997, Joseph moved to dismiss the contempt motion for want of jurisdiction. On the eve of the hearing date, having recently been alerted that he was to be in court on June 5 in another case, Joseph's attorney sought a brief continuance from the magistrate. The magistrate denied the request. Joseph's attorney called another attorney to appear for Joseph at the hearing.
After the hearing, the magistrate decided that it did have jurisdiction over the motion for contempt, further finding Joseph in contempt for the reasons stated in Nancy's motion. The magistrate recommended that Joseph serve twenty-four days in jail, but provided that Joseph could purge himself of contempt and avoid incarceration by delivering to Nancy all the property awarded her, paying Nancy all spousal support due her, and paying attorney's fees awarded her. Joseph objected to the magistrate's report and submitted statements from Joseph's physician concerning Joseph's likely reaction to jail. On July 31, 1997, the trial court overruled Joseph's objections, adopted the magistrate's report, and sentenced Joseph to twenty-four days in jail.
 B.
Joseph's fourth assignment of error states:
 The Trial Court, in Sentencing Appellant to Jail, Denied Him Procedural Due Process.
Joseph contends that his rights to due process, guaranteed by the constitutions of the United States and of Ohio, were violated in two ways: 1) the notice he received did not comply with R.C.2705.03; and 2) though the notice he received informed him that he could be jailed for failure to pay spousal support, it did not inform him that he could be jailed for failure to transfer assets.
Joseph's statutory claim is based upon his argument that "[n]o order or entry was made by the trial court and entered upon the journal" as required by R.C. 2705.03. In fact, the language of 2705.03 does not require that the trial court issue an order notifying the accused. R.C. 2705.03 states, in part:
 In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel.
Nancy's motion was filed with the clerk of court, and notified Joseph of the hearing. An entry of the Nancy's filing was made upon the journal. In an analogous case, the Tenth District Court of Appeals commented:
 The only possible deviation here was from the R.C. 2705.03 requirement that "a charge in writing" be "filed with the clerk of the court, [and] an entry thereof made upon the journal." The purpose of that requirement is to provide the party charged with contempt of court with written notice of the charges and thereby enable him or her to prepare a defense. Cincinnati v. Cincinnati District Council 51 (1973), 35 Ohio St.2d 197, 203. Thus, "notice which apprises the defendant of the nature of the charge against him so that he may prepare a defense is sufficient to comply with the requirements of R.C. 2705.03." Id. at paragraph two of the syllabus.
Williams v. Cordle (Feb. 8, 1996), Franklin App. No. 95APF08-978, unreported. There is no dispute in this case that Nancy's motion apprised Joseph 1) that she was requesting that the court find Joseph in contempt for failure to comply with court orders to transfer specified property and pay spousal support; 2) of the place, date, and time of a hearing to be held on the allegations; and that the notice gave Joseph opportunity to be heard by himself or through counsel. See id. Because no error was committed with respect to compliance with statutory notice procedures, Joseph's procedural due process rights were not denied in that respect.
Joseph also alleges that Nancy's motion for contempt violated constitutional due process because in complying with R.C.2705.031(C)(4)'s requirement that the accused be notified of potential penalties, Nancy's motion mentioned penalties only in connection with Joseph's failure to pay spousal support. The motion did not state what penalties could be meted out for contempt in connection with Joseph's failure to transfer assets. Joseph's constitutional claim is wholly unpersuasive.
Constitutional due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." Williams v.Cordle, supra, quoting In re Oliver (1948),333 U.S. 257, 275, 92 L.Ed.2d 682. Nancy's motion expressly requested that Joseph be held in contempt for his specific failures to comply with the separation order's provisions regarding spousal support and the transfer of assets. Nowhere does Joseph claim that he was misled or that his defense was compromised by the motion's non-inclusion of possible penalties for contempt with respect to his failure to transfer assets. We find no constitutional violation. Joseph's fourth assignment of error is overruled.
 C.
Joseph's third assignment of error states:
 The Trial Court Erred in Overruling Appellant's Motion to Dismiss the Contempt Citation for Want of Subject Matter Jurisdiction.
In Joseph's brief in response to Nancy's brief in response to Joseph's motion to dismiss, Joseph argued that:
 this Court has no jurisdiction with respect to a transfer of property from one party to another pending an appeal because these transfers would affect the power of the court of appeals to review, modify, or reverse the decree. Once title to the property is transferred an order of the court of appeals reversing, vacating, or modifying the order would be moot. Moreover, the bonds, which are the principal subject of the contempt motion, are restrained and held in the custody of the First National Bank of Ohio. Further, the real estate should not be transferred pending the resolution of the appeal.
We disagree.
The general rule is that a trial court is divested of jurisdiction once an appeal is taken. Haller v. Borror (1995),107 Ohio App.3d 432, 436. However, "the trial court retains jurisdiction `over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction.'" Id., quoting State ex rel. SpecialProsecutors v. Judges (1978), 55 Ohio St.2d 94. The trial court ordered Joseph to transfer asserts and pay spousal support. By not complying with these orders, Joseph made himself eligible for punishment for contempt. R.C. 2705.02(A). In the absence of a stay of execution or the execution of a supersedeas bond, both sought futilely by Joseph, the trial court retains the jurisdiction and the power to find a party in contempt. Joseph's third assignment of error is overruled.
 D.
Joseph's second assignment of error states:
 The Trial Court Abused Its Discretion and Denied Appellant Both Procedural and Substantive Due Process in Failing to Decide Appellant's Motion to Dismiss for Want of Subject Matter Jurisdiction Before Holding a Contempt Hearing.
Joseph moved to dismiss the contempt action on April 29, 1997. The magistrate did not rule on the motion prior to holding a hearing on June 5, 1997. Joseph baldly asserts that the magistrate's failure to rule on subject matter jurisdiction before receiving evidence denied him "both substantive and procedural due process under the Fourteenth Amendment to the United States Constitution and Art. I, §§ 1 and 16, of the Ohio Constitution." Joseph neither explains how the trial court's actions violated his due process rights nor refers to any legal authority in support of this assignment of error. If an argument exists that can support this assignment of error, it is not this court's duty to root it out. We disregard this inadequately argued assignment of error. See App.R. 12(A)(2) and 16(A)(7).
 E.
Joseph's first assignment of error states:
 The Trial Court Abused Its Discretion in Failing to Grant a Brief Continuance of the Contempt Hearing.
By late April, Joseph had been served with notice that the contempt hearing had been scheduled for June 5, 1997, at 9:00 a.m. Joseph's counsel, John Wolfe, spoke with the magistrate over the noon hour on June 4, 1997. Wolfe explained that he had to attend the final stage of a different trial that had extended into the morning hours of June 5, 1997, and requested that the contempt hearing be continued to noon of that date. The magistrate declined to reschedule the hearing. Wolfe later tried to make contact with Nancy's counsel. Neither Wolfe nor Joseph attended the hearing. Joseph was represented there by attorney Kevin Breen. Nancy testified, and was cross-examined by Breen.
In discussing her ruling at the hearing, the magistrate recounted the conversation she had with Wolfe the prior day:
 [I]t is my understanding that [Wolfe] felt this court didn't have jurisdiction to proceed, and that's basically his position.
 [Wolfe] admits that Mr. Cardone did not comply and I think he may even have said that he advised him not to comply, so I'm not really sure that we have a lot of disputed facts and why should we continue it just to hear that?
If Wolfe had anything to present other than what he told her, the magistrate continued, then she would set a time to hear from Joseph. No additional hearing was sought by Joseph.
Nancy argues that Joseph's request was properly denied because it was unwritten and untimely according to Loc.R. 12.01.[2] See Montague v. Montague (Dec. 11, 1997), Cuyahoga App. Nos. 71277, 71806, and 71807, unreported. We agree, but will nevertheless discuss the merits of this assignment of error.
The granting or refusing of a motion for a continuance rests within the sound discretion of the trial court; an appellate court will not reverse the denial of a continuance unless there has been an abuse of discretion. In re Kyle G. Alleged Abused Child (Aug. 1, 1997), Huron App. No. H-96-069, unreported. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.
In deciding a motion for continuance a trial court may consider the following factors: (1) the length of delay requested; (2) the number of continuances already requested; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the defendant contributed to the circumstance giving rise to the request for the continuance; and other relevant factors depending on the facts of the case. State v. Landrum (1990),53 Ohio St.3d 107, 115, 559 N.E.2d 710. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."Ungar v. Sarafite (1964), 376 U.S. 575, 589,11 L.Ed.2d 921, 84 S.Ct. 841; State v. Denson (1990), 66 Ohio App.3d 833,586 N.E.2d 1125. Id.
Joseph argues that the trial court abused its discretion in refusing his request. He points out that this was his first request, and that he asked merely for a three-hour delay. Joseph claims that he did not contribute to the delay, and that Wolfe called the magistrate and opposing counsel in as timely a fashion as the circumstances permitted. The magistrate thought otherwise, in light of the five weeks of notice Wolfe had of the hearing date.
We appreciate that Wolfe may have been detained unexpectedly by a trial that went on a few hours longer than he anticipated. His request did not entail undue delay. However, even if we were to find error, we would not reverse because Joseph shows no prejudice resulting therefrom. Joseph does not challenge the veracity or completeness of the magistrate's account of her conversation with Wolfe, which indicated that Wolfe did not plan to do more than argue jurisdiction at the hearing. Joseph was represented at the hearing by counsel who cross-examined Nancy's sole witness. The fact that Joseph did not follow up on the magistrate's suggestion that there be another hearing to present Joseph's testimony further indicates that Joseph was not prejudiced by Wolfe's absence from the hearing. Joseph's first assignment of error is overruled.
 F.
Joseph's fifth assignment of error states:
 Assuming Jurisdiction, the Trial Court Erred and Abused its Discretion in Finding Appellant in Willful Contempt.
The trial court adopted the magistrate's decision, which held Joseph in contempt for failing to pay spousal support and for failing to convey and deliver property as required by the separation decree. Joseph argues that because he is incapable of performing the acts ordered by the court, it was error for the court to find him in contempt.[3] Specifically, Joseph asserts that he has no access to his income-producing property because it was enjoined in the divorce action or restrained in other ways.
It is fundamental that the appellant bears the burden of affirmatively demonstrating error on appeal. Pennant Molding,Inc. v. C J Trucking Co. (1983), 11 Ohio App.3d 248, 251. Pursuant to App.R. 12(A), appellate review is limited to the record as it existed at the time the judgment was rendered. McKayv. Cutlip (1992), 80 Ohio App.3d 487, 490, n. 3. An appellate court may disregard an assignment of error where "the party raising it fails to identify in the record the error on which the assignment of error is based." App.R. 12(A)(2). App.R. 16(A)(3) requires an appellant to cite the court to the place in the record where each alleged error is reflected. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. Slyder v. Slyder (Dec. 29, 1993), Summit App. No. 16224, unreported. Absent specific references to the record, unsubstantiated assertions cannot be considered on appeal. Sykes Constr. Co. v. Martell (Jan. 8, 1992), Summit App. Nos. 15034 and 15038, unreported, at 25-26.
On appeal, Joseph has failed to substantiate by reference to evidence in the record his assertions that he has no access to his income-producing property. Joseph's fifth assignment of error is overruled.
 G.
Joseph's seventh assignment of error states:
 The Trial Court Erred and Abused Its Discretion in Sentencing Appellant to Serve 24 Days in Jail As Punishment Without Considering the Medical Reports of Bruce A. Gerlach, M.D.
In his objections to the magistrate's decision, Joseph asserted that incarceration would be physically and emotionally harmful to him. In support of his objections, Joseph filed a sworn statement by Dr. Bruce A. Gerlach, wherein Gerlach stated that Joseph is his patient, and that Joseph complains of severe pain in his back, hips, and legs, and that he suffers from extreme anxiety and stress. Joseph later filed another sworn statement by Gerlach in which Gerlach opined that incarceration could precipitate a psychiatric crisis on Joseph's part.
Joseph contends that the trial court erred by not considering these medical reports. He provides absolutely no evidence that the trial court did not consider the reports, nor any legal authority for the proposition that the trial court was obligated to consider the reports. Joseph's seventh assignment of error is meritless and, hence, overruled.
 H.
Joseph's sixth assignment of error states:
 The Trial Court Abused Its Discretion in Denying Appellant's Counsel's Motion for an Enlargement of Time to File a Supplemental Brief and for Oral Argument.
Over the course of this case, Joseph took advantage of his ample opportunities to file briefs. On April 29, 1997, Joseph filed a brief in support of his motion to dismiss the contempt action. On June 6, 1997, Joseph filed a brief in response to Nancy's motion in opposition to Joseph's motion to dismiss. On June 19, 1997, Joseph filed a brief in opposition to Nancy's motion to compel production of documents and in opposition to Nancy's request for attorney's fees. On July 11, 1997, Joseph filed objections to the magistrate's report and also filed a brief in support of his renewed motion for a stay. Finally, on July 24, 1997, Joseph filed a motion for enlargement of time to file a supplemental brief in support of his objections to the magistrate's report and for oral argument (he filed the brief itself on July 29, 1997). On July 31, 1997, the trial court overruled Joseph's objections and overruled his pending motions.
Joseph asserts, again without citing any legal authority, that the trial court erred in denying his motion to file a supplemental brief and for oral argument with respect to his objections to the magistrate's report. Joseph does not explain what, if anything, about the contents of the supplemental brief merited trial court review. Joseph also concedes that he cannot show that any prejudice resulted from the court's ruling. Joseph's sixth assignment of error is overruled.
 I.
Having overruled Joseph's seven assignments of error, we affirm the judgment of the trial court holding Joseph in contempt and the sentence therefrom. All of the assignments of error in this consolidated appeal having been overruled, the judgments of the trial court are affirmed.
Judgments affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ WILLIAM R. BAIRD, FOR THE COURT
REECE, J.
MILLIGAN, J., CONCUR
(Milligan, J., retired Judge of the Fifth District Court of Appeals, sitting by assignment pursuant to Article IV, § 6(C), Constitution.)
[1] There were no records presented concerning the Falls Savings and Loan savings account, which Joseph alleged to be an intermediate stopping point for the funds between the First National checking account and their transfer via First National cashier's checks to the purveyors of annuities.
[2] Loc.R. 12.01 of the Court of Common Pleas of Summit County, Domestic Relations Division, states, in relevant part:
 (A) The Court will not grant a continuance of a trial or other hearing without a timely written motion, affidavit, and order stating the reason for the continuance, and approval of opposing counsel or party, if pro se.
* * *
 (2) A motion shall be considered timely if filed ten (10) days before the scheduled hearing date.
[3] In defining contempt, R.C. 2705.06 provides in part:
 When the contempt consists of the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it.