In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00037-CV**
**IN THE INTEREST OF C.E.A.Q.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 09-02-01465-CV**

**MEMORANDUM OPINION**

*Pro se* appellant M.T.Q. appeals from the trial court's order modifying the terms of his child support obligation. M.T.Q. raises seventeen issues for our consideration. For the reasons explained herein, we affirm the trial court's order.

In an order establishing the parent-child relationship, the trial court found that M.T.Q. is C.E.A.Q.'s father and ordered M.T.Q. to pay child support of $385.00 per month, beginning May 1, 2009, as well as retroactive child support in the amount of $6820.88. In 2014, M.T.Q. filed a petition seeking to modify the terms and conditions for access to or possession of the child, and on April 4, 2016, the trial court signed an order granting the petition to modify. On February 16, 2018, M.T.Q.

1

filed a document entitled "Due Process Affidavit[,]" in which he made numerous arguments regarding the amount of his child support considering his status as a recipient of disabled veteran's benefits, and social security disability benefits. Attached to M.T.Q.'s "Due Process Affidavit" was a "Challenge to Constitutionality of a State Statute[,]" in which M.T.Q. asserted that section 154.062 of the Texas Family Code is unconstitutional as applied to him. M.T.Q. also filed a "Memorandum of Law . . . and Supplemental Petition for Challenge to Constitutionality of a State Statu[t]e" in support of his modification petition.

On March 5, 2018, the Office of the Attorney General ("OAG") filed a suit for modification of the child support order. M.T.Q. filed a response, in which he asserted, among other things, that the Department of Veterans Affairs has exclusive jurisdiction and that compensation for disability from social security and disabled veterans' benefits are protected federal benefits. In response, the OAG argued that the OAG has been assigned the right to collect child support from "any source authorized under the Social Security Act and the Texas Family Code." In addition, the OAG argued that federal law did not preempt the Texas Family Code and the State's police powers over domestic relations law, and that the trial court should therefore modify M.T.Q.'s child support obligation. M.T.Q. filed a response to the OAG's response, and the trial court subsequently signed an order, in which the court found that M.T.Q. was $1156.93 in arrears and granted OAG a judgment against

2

M.T.Q. for that amount. In its order, the trial court also found that M.T.Q.'s gross monthly resources are $4691 and modified M.T.Q.'s child support obligation to $590.21 per month.

M.T.Q. filed a motion for new trial, in which he asserted that the evidence was legally and factually insufficient to support the trial court's order, and that the trial court therefore abused its discretion in calculating child support. The trial judge signed an order granting M.T.Q.'s motion for new trial, and the trial judge also signed a temporary order requiring M.T.Q. to pay monthly child support in the amount of $574.85. At the final hearing, M.T.Q. told the trial judge that he is a disabled veteran, and he agreed that he draws disability benefits and social security disability benefits. M.T.Q.'s counsel lodged several objections at the beginning of the hearing, including (1) asserting that the trial court lacked jurisdiction because both parties reside in Harris County, (2) objecting to the assignment of Veterans Affairs (VA) benefits, (3) objecting to child support being taken from M.T.Q.'s VA benefits "against Article 4, Section 1 of the U.S. Constitution and [M.T.Q.]'s equal protection under the law[,]" and (4) objecting to the trial court ruling prior to the expiration of forty-five days pursuant to section 402.010 of the Texas Government Code. The trial court overruled each objection. Both C.E.A.Q.'s mother and M.T.Q. testified. During closing arguments, the OAG asserted that the trial court should order monthly child support in the amount of $434. On January 24, 2019, the trial

court signed an order on the modification suit, in which the court confirmed that M.T.Q. was $5767.68 in arrears and ordered M.T.Q. to pay child support in the amount of $434 per month.

M.T.Q. filed this appeal, in which he raises seventeen issues for our consideration. Specifically, M.T.Q.'s issues assert that the trial court (1) failed to perform its ministerial duty to rule on his petition challenging the constitutionality of a state statute; (2) did not follow section 402.010(b) of the Government Code, which directs the trial courts to wait forty-five days after the date the OAG is notified of a constitutional challenge to a state statute before ruling; (3) failed to insure that M.T.Q. was afforded substantive and procedural due process rights; (4) denied M.T.Q. due process by failing to accept his Due Process Affidavit "as truth and fact when it remained uncontroverted[;]" (5) failed to require appellees to follow 38 C.F.R. 3.458(g); (6) failed to require the OAG to follow the directives of the Federal Office of Child Support Enforcement; (7) failed to require appellees to submit a VA apportionment claim; (8) failed to acknowledge that 38 U.S.C. §§ 511 and 5301(a) "unequivocally indicate the only lawful provisioning of Appellant's VA award[;]" (9) erred by impliedly finding that the OAG had "privity of contract as a third party" with M.T.Q.'s VA apportionment claim; (10) violated title 38 of the U.S. Code, the Code of Federal Regulations, and "Congressional Acts" by rendering "an unauthorized, independent apportionment" of M.T.Q.'s VA disability benefits

4

award; (11) erred by including appellant's social security disability payments in calculating his child support obligations; (12) erred by not determining that C.E.A.Q.'s "monthly SSA derivative payment" is the total support amount that can be lawfully provisioned to C.E.A.Q. from M.T.Q.'s social security disability trust account; (13) erred by excluding M.T.Q.'s non-custodial "direct payments affidavits for credit provisioned by his SSDI trust payments paid directly to the Custodial Parent[;]" (14) erred by using M.T.Q.'s monthly veterans benefits and social security disability benefits for court costs, attorney's fees, and "state fee payments[;]" (15) erred by requiring M.T.Q. to pay costs and fees despite his indigent status; (16) erred by not awarding M.T.Q. attorney's fees and costs incurred in defending the petition for modification; and (17) erred by not finding that the OAG abused its power by filing a family violence citation warning without probable cause.

### ISSUES ONE, FIVE, SEVEN, EIGHT, NINE, TEN, AND ELEVEN

We interpret M.T.Q.'s arguments in issues one, five, seven, eight, nine, ten, and eleven as asserting that federal law preempts state law, thereby depriving the trial court of jurisdiction and rendering section 154.062 of the Family Code, which expressly includes veterans' disability as part of a child support obligor's net resources, unconstitutional. *See* Tex. Fam. Code Ann. § 154.062. According to M.T.Q., the trial court erred by including his veterans' disability and social security disability as part of his net resources. We address these issues together.

5

Section 154.062 of the Texas Family Code provides that for purposes of determining child support liability, net resources include wages, salary, and other compensation for personal services; interest dividends, and royalties; self-employment income; net rental income, and "*all other income actually being received, including . . . social security benefits other than supplemental security income, [and] United States Department of Veterans Affairs disability benefits other than non-service-connected disability pension benefits*[;]" disability and workers' compensation benefits; interest income; gifts and prizes; spousal maintenance, and alimony. Tex. Fam. Code Ann. § 154.062(a), (b)(5) (emphasis added).

State law that conflicts with federal law is without effect. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). However, courts must begin with the assumption that the States' historic police powers are not superseded by federal law unless that is the clear and manifest purpose of Congress. *Id*. Congressional purpose is the ultimate touchstone of preemption analysis. *Id*. Congress's intent to preempt state law may be either explicitly stated in the statute's language or implicitly contained within the structure and purpose of the statute. *Id*. If there is no express congressional command, state law is preempted if (1) the state law actually conflicts with federal law, or (2) federal law so thoroughly occupies a legislative field that Congress left no room for the States to supplement federal law. *Id*.

6

M.T.Q. argues that several federal statutes, including (1) the Uniformed Services Former Spouses Protection Act (USFSPA), (2) the Child Support Obligations Enforcement Act ("CSEA"), which is the portion of the Social Security Act that pertains to enforcement of child support obligations ("CSEA"), (3) the federal statute pertaining to nonassignability and exempt status of benefits, and (4) the Veterans Administration apportionment statute (VAAS), have preempted the United States Supreme Court's holding in *Rose v. Rose* and rendered section 154.062 of the Family Code unconstitutional.[1] *Rose* involved a disabled veteran whose main source of income was federal veterans' benefits from the Veterans' Administration and Social Security Administration. *Rose v. Rose*, 481 U.S. 619, 622 (1987). Upon the veteran's divorce, the trial court considered the factors set forth in the applicable Tennessee statute, which included his earning capacity, obligations, needs, and financial resources, and the trial court ordered him to pay child support. *Id*. Rose asserted that the Tennessee court lacked jurisdiction over his disability benefits and that the state statute was null and void because it violated the Supremacy Clause. *Id*. at 623.

In addressing the issue, the Supreme Court held as follows:

Given the traditional authority of state courts over the issue of child support, their unparalleled familiarity with local economic factors affecting divorced parents and children, and their experience in applying state statutes . . . that do contain detailed support guidelines

---

[1]481 U.S. 619 (1987).

and established procedures for allocating resources following divorce, we conclude that Congress would surely have been more explicit had it intended the Administrator's apportionment power to displace a state court's power to enforce an order of child support. Thus, we do not agree that . . . the state court's award of child support from appellant's disability benefits does 'major damage' to any 'clear and substantial' federal interest created by this statute.

*Id*. at 628. The Court concluded that Congress intended for veterans' disability benefits to provide for disabled veterans as well as for their families, and that state proceedings to enforce a valid child support order are consistent with such intent. *Id*. at 630-31, 634. In addition, the *Rose* court noted that the VA administrator's authority over payment of disability benefits as child support did not preempt state child support enforcement laws. *See id*. at 626 (holding that "Nowhere do the regulations specify that only the Administrator may define the child support obligation of a disabled veteran in the first instance."). *Rose* expressly holds that federal law does not prohibit a state court from determining a veteran's child support obligation. *Id*. at 626, 630-31. Therefore, the trial court did not err by considering M.T.Q.'s veteran's disability benefits in calculating his net resources for purposes of child support. *See id*.

The USFSPA explicitly provides that "disposable retired pay" of a veteran may be paid directly to a Title IV-D agency or to a state disbursement unit upon

8

presentation of a court[2] order for child support. 10 U.S.C.A. § 1408(d). After reviewing the statute as a whole, we conclude that nothing in the USFSPA indicates that Congress intended to preempt the ability of state trial courts to consider veterans' benefits in calculating the net resources of a parent who owes child support. *See generally* 10 U.S.C.A. § 1408.

We now turn to the CSEA. The CSEA provides that funds due to an individual from the United States may be used "to enforce the legal obligation of [an] individual to provide child support[.]" 42 U.S.C.A. § 659(a). Explicitly included within the statute's definition of "individual" are "members of the Armed Forces of the United States," and the statute also expressly permits state agencies to enforce the individual's child support obligation. *Id.* We conclude that nothing in the CSEA indicates that Congress intended to preempt the ability of state trial courts to consider veterans' benefits in calculating the net resources of a parent who owes child support. *See generally* 42 U.S.C.A. § 659; *see also Cipollone*, 505 U.S. at 516.

We next turn to the federal statute pertaining to the nonassignability and exempt status of benefits. *See* 38 U.S.C.A. § 5301. The statute provides that payment of benefits "shall not be assignable except to the extent specifically authorized by law, . . . and shall not be liable to attachment, levy, or seizure by or under any legal

---

[2]Included in the USFSPA's definition of "court" is "any court of competent jurisdiction of any State[.]" 10 U.S.C.A. § 1408(a)(1)(A).

or equitable process whatever, either before or after receipt by the beneficiary." *Id.* § 5301(a)(1). We conclude that nothing in the statute indicates that Congress intended to preempt state trial courts' ability to include veterans' benefits in a parent's net resources for purposes of setting the amount of child support. *See generally* 38 U.S.C.A. § 5301; *see also Cipollone*, 505 U.S. at 516.

Lastly, we turn to the VAAS, which provides that all or any part of a veteran's "compensation, pension, or emergency officers' retirement pay" may be apportioned on behalf of the veteran's children. *See* 38 U.S.C.A. § 5307(a)(1). According to the statute, apportionment may occur if the veteran is not reasonably discharging his duty to support his dependents. 38 C.F.R. § 3.450(a)(1)(ii). We conclude that nothing in the apportionment statute indicates that Congress expressly or impliedly intended to preempt the ability of state trial courts to consider veterans' benefits in calculating the net resources of a parent who owes child support. *See* 38 U.S.C.A. § 5307; 38 C.F.R. § 3.450(a)(1)(ii); *see also Cipollone*, 505 U.S. at 516. We overrule issues one, five, seven, eight, nine, ten, and eleven.

## ISSUE TWO

In issue two, M.T.Q. argues that the trial erred by not waiting forty-five days after the date the OAG was notified of his constitutional challenge. *See* Tex. Gov't Code Ann. § 402.010(b) (providing that "A court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date

10

notice . . . is served on the attorney general."). M.T.Q. seems to argue that the trial court was required to wait forty-five days before ruling on M.T.Q.'s challenge to the constitutionality of section 154.062 of the Family Code. When construing statutes, we give words their plain meaning. *See Epco Holdings, Inc. v. Chicago Bridge & Iron Co.*, 352 S.W.3d 265, 269-70 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd); *see also* Tex. Gov't Code Ann. § 311.011(a). Section 402.010(b) of the Government Code expressly states that the trial court must observe the forty-five-day waiting period when entering a final judgment that declares a state statute unconstitutional; that is, it does not require the trial court to wait forty-five days before rejecting a challenge to the constitutionality of a statute. *See id*. In this case, the trial court did not hold the statute unconstitutional; therefore, the forty-five-day waiting period in section 402.010(b) of the Government Code does not apply. *See* Tex. Gov't Code Ann. § 402.010(b). Accordingly, we overrule issue two.

## ISSUES THREE, FOUR, SIX, TWELVE, THIRTEEN, FOURTEEN, FIFTEEN, SIXTEEN, AND SEVENTEEN

Appellate briefs "must contain a clear and concise argument for the contentions made, *with appropriate citations to the authorities and to the record*." Tex. R. App. P. 38.1(i) (emphasis added). An issue that is unsupported by argument or citation to any legal authority presents nothing for the court to review. *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied). An appellant must put forth specific argument and analysis demonstrating that the

11

record and the law support his contentions. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "An appellate court has no duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred." *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677 (Tex. App.—Dallas 2004, pet. denied). A *pro se* litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure. *In re Office of Attorney Gen. of Tex.*, 193 S.W.3d 690, 693-94 (Tex. App.—Beaumont 2006, orig. proceeding).

M.T.Q. set forth issues three, four, six, twelve, thirteen, fourteen, fifteen, sixteen, and seventeen in the statement of issues in his brief, but he included no argument or citations to the record or the applicable law in the body of his brief. We therefore conclude that M.T.Q. has failed to properly present these issues for appellate review. *See* Tex. R. App. P. 38.1(i); *San Saba Energy, L.P.*, 171 S.W.3d at 338; *Strange*, 126 S.W.3d at 677; *Plummer*, 93 S.W.3d at 931. Accordingly, we overrule issues three, four, six, twelve, thirteen, fourteen, fifteen, sixteen, and seventeen. Having overruled each of M.T.Q.'s issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 20, 2020
Opinion Delivered September 3, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.