

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00292-CV
_____

IN THE INTEREST OF E.I.N., JR., A CHILD

On Appeal from the 250th District Court
Travis County, Texas
Trial Court No. D-1-FM-02-006658; Honorable Darlene Byrne, Presiding

November 5, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

"[F]amily support obligations are deeply rooted moral responsibilities." *Rose v. Rose*, 481 U.S. 619, 632, 107 S. Ct. 2029, 95 L. Ed. 2d 599 (1987).

In this appeal, we are asked to review a trial court's order directing a lump sum payment of $50,000 towards a child support arrearage of over a quarter of a million dollars. Appellant, E.N., Sr., challenges the order by two issues.[1] By his first issue, he

---

[1] Payment was due by December 15, 2020. On December 2, 2020, E.N., Sr. filed a motion to suspend the trial court's order. This court was notified on December 10, 2020, that a review hearing originally set for December 17, 2020, was rescheduled until after disposition of this appeal. Thus, the motion was rendered moot by letter dated January 5, 2021.

contends the trial court abused its discretion in ordering him to make a lump sum payment toward his child support arrearage that as of 2012 totaled over $161,000 and in 2020 was over $264,000.[2]  By his second issue, he asserts he was denied due process because he was not provided with notice of the hearing and because the trial court was biased.[3] Appellee, the Office of the Attorney General of Texas, contends the trial court's order is interlocutory and this court is without jurisdiction to review the order.  Alternatively, the Attorney General argues the trial court's order should be affirmed.  We dismiss this purported appeal for want of jurisdiction.

### BACKGROUND

This case has an arduous and convoluted history.[4]  E.N., Sr. and his former spouse share one son who was born in 2000.  The parties divorced in May 2003, and sole managing conservatorship of the child was granted to the mother.  E.N., Sr. was ordered to pay $1,200 per month in child support.  Since the divorce, there have been numerous hearings related to various motions and orders for contempt, for modification of conservatorship, and for enforcement of child support due to E.N.'s failure to pay for almost the entirety of his child's minor years.

---

[2] By 2020, the child the subject of the child support obligation in question had reached majority, thereby fixing the principal amount of child support owed.  The obligation to pay interest on unpaid child support had not, however, ceased.

[3] Originally appealed to the Third Court of Appeals, sitting in Austin, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[4] In the record before us, there are transcriptions of four hearings:  (1) a hearing on July 26, 2019, on the Attorney General's motion to enforce; (2) a hearing on February 19, 2020, on E.N., Sr.'s motion for release following his incarceration for coercive contempt; (3) a hearing on July 6, 2020, to determine the child support arrearage and arrange a payment plan; and (4) a hearing on September 9, 2020, characterized as a hearing on a motion for new trial from the July 6, 2020 hearing. The testimony is confusing and at times, the chronology is difficult to follow.

E.N., Sr. was a certified public accountant for fifteen years before allowing his certification to lapse. He testified that he had a nervous breakdown in 2002 and was hospitalized for thirty days. He remarried in 2005, and his current spouse is a nurse. They have three children and live in a large house they claim as their homestead.

E.N., Sr. has a sister who owns a home health care business. He testified that he works for her but not exclusively. Both of them testified that she has helped him financially for years and he has incurred a debt to her of over $300,000. E.N., Sr. claimed he is self-employed and only earned $26,000 in 2018, and $12,000 in 2019. He is the sole shareholder of a corporation named El Nimco, Inc.

In 2010, the Attorney General filed a motion to foreclose a child support lien of over $123,000. The pleading alleged that E.N., Sr. owned several real properties and a collectible 2001 BMW purchased by him in 2001 for $140,000. He did not appear at the hearing on the motion and a year later, on June 15, 2011, the trial court confirmed the child support arrearage at over $145,000 and rendered a default judgment in favor of the Attorney General. The trial court ordered E.N., Sr. to surrender the certificate of title to the 2001 BMW for liquidation and severed the foreclosure of the child support lien as to the real properties.

E.N., Sr. moved to set aside the default order foreclosing the child support lien, which the trial court granted. By order dated August 5, 2011, the trial court set aside the default order but specifically ordered that the severance concerning the real properties would not be set aside. Also, the order recited it was conditioned on E.N., Sr. not transferring the title to the BMW.

3

As the saga continued, in February 2012, the Attorney General again moved to foreclose the child support lien with arrearages now over $161,000. The Attorney General alleged that E.N., Sr. owned three properties and the 2001 BMW. By order dated March 23, 2012, the trial court again rendered judgment for the Attorney General and found that E.N., Sr. was voluntarily underemployed, had access to corporate funds and property, and had a gross monthly income in 2011 of $22,000. The order confirmed the child support arrearage at that time to be $161,668.61 and ordered E.N., Sr. to pay $600 each month beginning April 1, 2012. The order also recited as follows:

> [t]he Court finds that [E.N., Sr.] voluntarily offered to relinguish [sic] his right to the following non-exempt property to make payment toward his child support arrears. The Court FINDS that [E.N., Sr.] has in his possession the following non-exempt property, to wit: a 2001 BMW Z8S . . . . The Court ORDERS [E.N., Sr.] to surrender the certificate of title of the above described 2001 BMW Z8S motor vehicle and all other documents and records to the motor vehicle to the [Attorney General] . . . by March 9, 2012.

Despite the trial court's order, E.N., Sr. did not comply and instead transferred the title to the BMW to his sister, allegedly to satisfy his debt to her. On May 25, 2012, the Attorney General filed a motion to enforce the March 23, 2012 order and also requested that E.N., Sr. be held in contempt and jailed for transferring title of the vehicle to his sister after the trial court had ordered him to surrender a clean title to the Attorney General. A hearing on the motion was delayed until July 26, 2019, in part because E.N., Sr. had absconded after defying the trial court's order to surrender title to the BMW. He was later arrested on a writ of attachment.

At the 2019 hearing, the Attorney General sought coercive contempt for E.N., Sr.'s failure to comply with the previous court orders. Testimony was presented from E.N., Sr.,

his current spouse, his former spouse, his sister, and an investigator for the Attorney General.

E.N., Sr. testified that the home he shares with his current spouse was purchased in 2012 but is in her name only. The Attorney General investigator confirmed that fact but testified that in 2010,[5] both E.N., Sr.'s name and his spouse's name were on the deed; however, when the child support litigation began, E.N., Sr. deeded the property to his spouse.

E.N., Sr. also testified that he liquidated several properties he owned to pay his sister for the financial assistance she had provided. He claimed that two other lots were listed for sale and that he would apply the sale proceeds from those lots to the child support arrearage. He also maintained that he transferred the title to the BMW to his sister because he owed her a debt. The Attorney General's investigator testified that the car had been paid in full in 2010.

E.N., Sr.'s current spouse testified the homestead was valued at $380,000 and the monthly mortgage was $2,200, with monthly expenses ranging between $5,000 to $6,000. She pays the mortgage and utilities and purchases groceries, and her employer provides health insurance. She also testified the down payment was paid from a settlement she received for a work-related injury. She claimed that she and E.N., Sr. live paycheck to paycheck and he cares for their three children while working from home because they cannot afford childcare. She maintained that E.N., Sr. was not supposed

---

[5] There is confusing testimony on the ownership of the home. E.N., Sr. testified the home was purchased in 2012. Regardless of the parties' characterization of the home as separate property, it is undisputed that it was purchased during the marriage.

5

to be listed on any documents involving the home because she made the down payment with her separate property.

E.N., Sr.'s sister testified that after obtaining title to the BMW, she sold it and used the proceeds for her business which was experiencing financial difficulties. She claimed she was unaware of the trial court's order requiring E.N., Sr. to surrender the title to the BMW. She also claimed to be unaware that the Department of Motor Vehicles showed her as the owner in 2019, and that registration renewal notices were being sent to E.N., Sr.'s current wife.

E.N., Sr.'s former wife testified that she is disabled from a stroke and unable to work. She is divorced for a second time and has had to raise E.I.N., Jr. alone.

At the conclusion of the testimony, the trial court announced as follows:

> [i]t is obvious to this Court that there is some kind of scheme going on with this respondent here between his wife and his sister. It seems to be that property is being shuffled around and names changed. The value of the car, I believe, was testified would be in excess of $140,000.

On July 26, 2019, the trial court signed an *Order Enforcing Child Support Obligation*, finding that that E.N., Sr. had violated the 2012 order by transferring title to the BMW to his sister. He was held in coercive contempt and was committed to county jail "until he delivers a clean certificate of title, without liens as to the [BMW] directly to this court, or pays a $150,000 cash bond to the Attorney General of Texas." Although the record reflects that E.N., Sr. appeared in person and by attorney, he did not file a motion for new trial or otherwise seek to reform that order.

6

After being in jail for approximately seven months, on January 17, 2020, E.N., Sr. filed a motion for release from confinement due to impossibility to perform the conditions of coercive contempt. He amended his motion on February 4, 2020. A hearing on his amended motion was held on February 19, 2020. At that hearing, he presented testimony from his sister and made an offer of proof through an individual named Alain Dikdan, who had purchased the BMW from E.N., Sr.'s sister in November 2015 for $135,000. Evidence established that Dikdan paid E.N., Sr.'s sister $55,000 in cash and issued a check for $80,000 for the balance. The check, however, was issued to E.N., Sr.'s corporation, El Nimco, Inc., because his sister did not have a checking account and she owed taxes to the Internal Revenue Service. Her business account was already being garnished and she needed the money from the sale of the BMW to pay her tax obligations and meet payroll. In 2019, the title to the BMW was still in the sister's name, but Dikdan explained he purchased the car as an investment and did not record the purchase because he did not have a dealer's license.

E.N., Sr.'s sister also testified she has provided over $300,000 in financial assistance to E.N., Sr. for legal fees and bills. Her testimony was supported by a ledger detailing the debt owed. The evidence showed that E.N., Sr. had transferred title to some of his real properties to his sister to satisfy a portion of his debt to her. She testified that she will always help her brother.

Following the hearing, on February 26, 2020, the trial court signed a new order granting E.N., Sr.'s motion for release and vacating the specific terms of its order of coercive contempt. However, the trial court ordered that E.N., Sr. remain in jail "until such time as he pays a $10,000 cash bond to the Attorney General of Texas, which shall be

7

applied toward the balance of his outstanding child support arrearage." With financial assistance from his spouse and sister, he posted that bond and was released. The $10,000 was applied to his child support arrearage.

Four months later, on July 6, 2020, the trial court held a "review hearing." The purpose of the hearing was to arrange a payment plan for child support arrearage. Before any testimony was presented, counsel for E.N., Sr. advised the court that E.N., Sr. was actively seeking employment and had finally set up an account to make child support payments, conceding such action was twenty years overdue. On counsel's advice, E.N., Sr. began making child support payments of $25 per month for three months from his spouse's income as a show of "good faith" prior to the review hearing. During his testimony, however, he admitted that without counsel's advice, it "never dawned" on him that he would be required to make any payments while unemployed.

E.N., Sr. testified to his current employment—a "storefront" on Amazon and a YouTube channel offering advice on cycling and bike safety; however, he claimed that neither venture had produced any income. During questioning by his own counsel, E.N., Sr. confirmed that allowing his child support arrearage to increase to over a quarter of a million dollars was "dumb" and that it was his fault. He desired to resolve the issue and no longer have to deal with his former spouse.

E.N., Sr.'s former spouse appeared pro se at the review hearing and the trial court permitted her to cross-examine E.N., Sr. Their interaction was, to say the least, hostile. They rehashed that he had no income or assets and that his current spouse maintains the home and pays all expenses. They also revisited the transfer of title to the BMW to his sister to repay her for all her financial assistance in defending the child support

8

proceedings. Without objection, the former spouse questioned E.N., Sr. on how long it would take to pay his arrearage since he had been delinquent for seventeen years. Over objection, the trial court permitted the former spouse to state on the record that "[E.N., Sr.] has been especially capable of making money and hiding it and keeping it off the books."

During closing arguments, the Attorney General urged the trial court to order E.N., Sr. to pay a lump sum of $70,000 toward his arrearage and $500 per month for six months with an increase to $1,000 per month thereafter. In response, counsel for E.N., Sr. argued as follows:

> there are no pleadings on file from the Attorney General asking for an *increase in child support* or any *modification for a child support order*. The Attorney General has not noticed this hearing specifically to readjust [E.N., Sr.'s] child support payments.

(Emphasis added).

After closing arguments were presented, the trial court announced as follows:

> [a]s it relates to the issue of a motion being before the Court or not from the Attorney General, the Court finds that the sua sponte order issued by me on February 25, 2020 gave [E.N., Sr. and his counsel] adequate notice that the Court's purpose for this review hearing was to review the outstanding child support arrearage and ensure that appropriate orders are in place for a payment plan . . . the Court does find that the Court sua sponte put before itself the issue of paying off this arrearage.

Based on the testimony presented at the "review hearing," on July 14, 2020, the trial court signed a new order requiring E.N., Sr. "to pay $50,000.00 towards his child support arrearage on or before the 15th day of December 2020, and by paying $228.00 each month beginning the 1st day of August, 2020 . . . ." It is this order which E.N., Sr. seeks to appeal.

9

**JURISDICTIONAL ISSUE**

Initially, we address the Attorney General's assertion that this court does not have jurisdiction to review the trial court's order for child support arrearage. Relying on *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001), the Attorney General posits that because there was no conventional trial on the merits, the order does not dispose of the case or the parties and is not final for purposes of appeal. Also, the Attorney General argues the order is not the type of interlocutory order which may be appealed pursuant to the exceptions of interlocutory orders listed in section 51.014 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (West Supp. 2020).[6] By his reply brief, E.N., Sr. disagrees with the Attorney General's position. While we agree with the Attorney General's position, we present additional authority for doing so.

**ANALYSIS**

Section 105.006 of the Texas Family Code, entitled "Contents of Final Order," provides that in Title 5 cases (parent-child relationship and suits affecting the parent-child relationship), other than proceedings under chapter 161 (termination proceedings) and chapter 162 (adoptions), a final order must contain specific information and certain statutory warnings in "boldfaced type, capital letters, or underlined." § 105.006(a)-(e)(2) (West 2019). A trial court order that does not contain the required contents and that does not state with "unmistakable clarity" that it is a final judgment as to all claims and all parties is not final. *See Qutiefan v. Safi*, No. 01-17-00925-CV, 2018 Tex. App. LEXIS 1764, at *1-2 (Tex. App.—Houston [1st Dist.] March 8, 2018, no pet.) (mem. op.) (citing *Lehmann*,

---

[6] All future references to "section" or "§" are to the Texas Family Code unless otherwise designated.

39 S.W.3d at 204). The July 14, 2020 order directing E.N., Sr. to make a $50,000 lump sum payment does not contain any of the requirements of a final order as mandated by section 105.006, nor does it recite that it is a final judgment.[7] *See Palma v. Young*, 601 S.W.3d 799, 801 (Tex. 2020).

Additionally, a trial court order is not appealable if it is "not concerned with disposing of all claims and parties" before it. *See In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 915-16 (Tex. App.—Fort Worth 2007, orig. proceeding) (finding that contempt orders are not appealable but may be challenged by a petition for writ of habeas corpus if the contemnor is confined or a petition for writ of mandamus if no confinement is involved). In other words, an order is not appealable if it only seeks to facilitate compliance with another order. *See In re A.P.*, No. 01-18-00935-CV, 2020 Tex. App. LEXIS 2376, at *6 (Tex. App.—Houston [1st Dist.] March 24, 2020, no pet.) (mem. op.). *See also Cline v. Cline,* 557 S.W.3d 810, 812 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding that appellate court had no jurisdiction to review portion of judgment holding appellant in contempt).

Here, the order being appealed does not "dispose of all claims and parties before it." It does not resolve the amount of child support due and owing, nor does it modify the amount of child support payable. Technically, all the order being appealed does is "facilitate compliance with another order" by setting the terms and conditions that E.N., Sr. must comply with to avoid additional confinement pursuant to an order of coercive contempt.

_____

[7] The *Order* does recite that "[a]ll relief sought in this proceeding which is not expressly granted in this order is denied."

When E.N., Sr. filed his motion and amended motion for release in 2020, the trial court's plenary power over the July 26, 2019 order had long since expired. *See* TEX. R. CIV. P. 329b(d). *See also In re Troiani*, No. 13-17-00204-CV, 2018 Tex. App. LEXIS 6003, at *11 (Tex. App.—Corpus Christi June 27, 2017, orig. proceeding) (noting that the trial court's continuing exclusive jurisdiction is not equivalent to, or coordinate with, its plenary jurisdiction). In the underlying case, there were no other unresolved pleadings pending which sought to invoke the trial court's jurisdiction on child support issues.

Furthermore, the trial court's July 14, 2020 order anticipated a subsequent review hearing scheduled for December 17, 2020, to "review the amount of any outstanding child support by [E.N., Sr.] and ensure that appropriate orders are in place for a payment plan for [E.N, Sr.] to pay off the remainder of the arrearage." The order is designed to facilitate compliance with a prior order and to schedule a review hearing to assess the outstanding child support. It does not purport to dispose of any claims or parties. For the reasons provided herein, we conclude the July 14, 2020 order was never intended to be a "final order" and is not appealable. Consequently, this court lacks jurisdiction over this purported appeal. *See* § 109.002(b) (West Supp. 2020).

### MOTION FOR THIS COURT TO ISSUE AN "OPINION"

Pending before this court is E.N., Sr.'s motion by which he requests that an "opinion," as opposed to a "memorandum opinion," be issued. Relying on Rule 47.4(a) and (b) of the Texas Rules of Appellate Procedure, he contends this appeal presents a novel fact situation and issues of constitutional law. Because we have disposed of this purported appeal without addressing the merits of the case, the motion is denied.

**CONCLUSION**

Having determined that the trial court's July 14, 2020 interim order was not based on any pleadings regarding the merits, we conclude this court has no jurisdiction to review the order.

Patrick A. Pirtle
Justice